[S. F. No. 13921. In Bank.—July 16, 1930.]

COUNTY OF LOS ANGELES (a Body Corporate and Politic), Petitioner, v. SIDNEY T. GRAVES, etc., Respondent.

O'Melveny, Tuller & Myers for Petitioner.

Hill, Morgan & Bledsoe, *Amici Curiae,* for Petitioner.

Everett W. Mattoon, County Counsel, and Ray C. Mc-Allister, Deputy County Counsel, for Respondent.

U. S. Webb, Attorney-General, and Neil Cunningham, Deputy Attorney-General, *Amici Curiae.*

WASTE, C. J.—The County of Los Angeles was granted an alternative writ of mandate, directed to the respondent as chairman of the board of supervisors of the county, commanding him to execute and deliver to the state of California conveyances of certain described parcels of real property as provided for in a resolution of authorization passed at a duly assembled meeting of that body, or to show cause why he should not do so. Respondent has demurred to the petition for the writ.

The property involved was acquired by the petitioner for public park purposes, and its desire and intention is to transfer the same to the state for use and development as a part of the state park system. The chairman of the board contends that county boards of supervisors are bodies of limited and restricted jurisdiction having only such powers as are granted to them by statute, and refuses to carry out the declared purpose of the board, for the reason, he asserts, that the board is without authority to transfer property to the state for public park purposes. He concedes that by reason of express legislative enactment a county may convey property to the state to be used as a site for a state building or for highway purposes, but argues that authority has been withheld to transfer property for the purpose herein contemplated.

We cannot agree with respondent's contention. By the enactment of the California State Park Bonds Act (Stats. 1927, chap. 765, p. 1480), provision was made for the creation and maintenance of a state park system. Section 5 of that act provides, in part, that "the state park finance board shall direct the sale of bonds only when there has been deposited with the state treasury a fund from private gift, *city or county appropriation,* or from some source other than appropriation by the people of the state of California, or the sale of state bonds, which shall be equal to the amount to be realized for the project intended to be accomplished from the sale of bonds as hereinabove provided, except that the state park finance board shall authorize the sale of bonds for the purposes indicated in this act to carry out any park project for the acquisition of lands and properties when it is shown to the satisfaction of the state park finance board that half the total value

involved in such project has been provided from *sources other than appropriation by the people of the state of California or the sale of state bonds,* in the form of land, timber or other properties, or in money, or in any or all such properties. . . ." (Italics added.) From this provision it clearly appears that it was the intention of the legislature, as expressed in the plan of the California State Park Bonds Act, that moneys derived from the sale of state bonds shall be expended for the acquisition of park properties when, and only when, they are matched by funds in an equal amount or property of an equal value "from sources other than appropriation by the people of the state or the sale of state bonds."

It is our opinion that the language of section 5 of the act is sufficiently comprehensive to authorize the transfer of county funds or property for state park purposes. Any other construction of the section would render the phrase "city or county appropriation" meaningless and useless. ██ It will be presumed that the members of the legislature knew the meaning of the language employed, and used it advisedly. In construing a legislative enactment effect is to be given, when possible, to all of the language employed. (23 Cal. Jur. 757, sec. 131.) Under these rules, it is only reasonable to conclude that by the insertion of the above quoted phrase the legislature intended to confer upon cities and counties the power to appropriate moneys or transfer properties for the development and expansion of the state park system. This conclusion finds support in section 7 of article XVI of the state Constitution, proposed by the same legislative body and adopted by the electorate in 1928, which declares that "the said California State Park Bond Act of 1927 is hereby approved, adopted, legalized, ratified, validated and made fully and completely effective. All provisions of this section shall be self-executing and shall not require any legislative action in furtherance thereof, but this shall not prevent such legislative action. Nothing in this Constitution contained shall be a limitation upon the provisions of this section."

Petitioner states: "When it is remembered that the State Park Bonds Act provides that state bond funds may be matched by county appropriations, and the constitutional amendment provides that this act shall be made 'fully and

completely effective,' we submit that there is no escape from the conclusion that it was the legislative and constitutional intent that counties and cities should be and were empowered to make such appropriations. How else could said act be made fully and completely effective? Such appropriations are contemplated in the act. They are provided for therein as a means of accomplishing its objects and purposes. If they are not permitted to be made the act will be rendered in large part ineffective.'' In our opinion, petitioner's argument is unanswerable.

■ Even if the act be presumed to be deficient as an express grant of such authority, this need not prove fatal to petitioner's cause, for counties are invested with, and are free to exercise not only such powers as have been expressly granted to them but also such powers as have been granted to them by necessary implication. (See secs. 4000 and 4041, subd. 25 [1929 Supp. Codes and Gen. Laws, p. 2652], of the Political Code.) It cannot be questioned that the State Park Bonds Act, *supra,* impliedly at least, authorizes counties to contribute either funds or properties to the development of the park system therein provided for. ■ Then, again, subdivision 4 of section 4003 of the Political Code provides that a county has power to ''manage and dispose of its property as the interests of its inhabitants may require.'' The counties are mere governmental agencies of the state, and the property entrusted to their governmental management is public property, the proprietary interest in which belongs to the public. If there be a legal title in the county, it is a title held in trust for the whole public. In the absence of constitutional restrictions, the legislature has full control of the property so held by the counties as agencies of the state. (*Reclamation Dist.* v. *Superior Court,* 171 Cal. 672, 679, 680 [154 Pac. 845], and cases cited.) It would seem to follow, therefore, that no specific grant of power is necessary to enable a county to convey land held by it to the state. But, in the case now before us, we find both constitutional and statutory sanction for the transfer.

■ Section 4 of an act defining the state park system (Stats. 1927, chap. 763, p. 1477) authorizes the state park commission to acquire, as a part of the state park system, such lands and other properties as in its judgment shall be suitable for that purpose. Section 2 declares that ''All

parks, public camp grounds, monument sites, and landmark sites, and sites of historical interest, outside the limits of incorporated cities, heretofore or hereafter created or acquired by the state or which are under its control shall constitute the state park system." The second parcel of real property proposed to be transferred by the petitioner to the state for park purposes lies within the municipality of Manhattan Beach, and the point is made by respondent that under the foregoing quoted section the state park commission is not authorized to accept conveyances of land within incorporated cities for park purposes. It is settled law that a court will not issue a writ of mandate to compel the doing of a vain or useless thing, and, therefore, before directing respondent to execute a deed to this second parcel, it is essential that we first determine whether the state park commission may, with propriety, accept such conveyance. Petitioner argues that this question must receive an affirmative answer, contending that it is a rule of grammatical construction and one of the simplest canons of statutory construction that a limiting clause is to be confined to the last antecedent, unless the context or the evident meaning of the statute requires a different construction. Under this rule, so petitioner argues, the phrase, "outside the limits of incorporated cities," refers to and qualifies the° phrase, "sites of historical interest," immediately preceding it, and nothing else. In support of this contention petitioner relies principally on the case of *Puget Sound E. Ry.* v. *Benson,* 253 Fed. 710, 711 [165 C. C. A. 304]. Respondent, while conceding the rule to be as stated by petitioner, contends that the context of section 2 is such as to require the conclusion that the qualifying phrase was intended by the legislature to refer to all that precedes it.

We have examined the act generally, and section 2 thereof in particular, and we are inclined to agree with petitioner's construction thereof. In our opinion, the inclusion of the conjunction preceding the phrase, "landmark sites," in addition to the conjunction preceding the phrase, "sites of historical interest," tends to support the conclusion that the legislature intended to describe two groups of publicly owned lands, viz., one group including "all parks, public camp grounds, monument sites, and landmark sites," which may be included within the state park system,

regardless of whether they are within or without incorporated cities, and the other group including only "sites of historical interest," which may be included within the state park system provided they are not within the limits of incorporated cities. The phrase, "all parks, public camp grounds, monument sites, and landmark sites," is grammatically complete and set off for the next succeeding phrase by a comma and the conjunctive "and." Legislative history of the statute confirms this view.

The fact that sections 3 and 5 of the act contemplate that the state park commission may enter into a contract with a city for the care of a park of the state park system, the expense to be paid from the general fund of the city, is consistent with our conclusion that lands within incorporated cities may form a part of the state park system, for it is unlikely that a city would be willing to contract with the state to care for a park outside of its territorial limits. It is also unlikely that a city would furnish land or half the money necessary to purchase land for a state park site unless at least a part thereof were within its corporate limits. That we are not doing violence to the legislative intention in so construing section 2 of the act is also borne out by the fact that at the same legislative session at which the State Park Bonds Act was passed provision was made for the establishment of a state park within the city and county of San Francisco. (Stats. 1927, chap. 784, p. 1533.) If, as contended by respondent, the legislature had intended by the enactment of section 2 of the act to prohibit the inclusion of city lands within the state park system, it probably would not have provided, by separate enactment, for the establishment of such a park within the confines of San Francisco. In this connection, we call attention to the decision in *City of Sacramento* v. *Adams*, 171 Cal. 458, 462, 463 [153 Pac. 908], in which this court upheld the power of the city to acquire land within its limits and convey it to the state for the purpose of a public park, the state to erect public state buildings thereon.

The demurrer is overruled and the alternative writ heretofore granted is made peremptory.

Seawell, J., Richards, J., Shenk, J., Curtis, J., Preston, J., and Langdon, J., concurred.