[Civ. No. 14429.   Second Dist., Div. Three.   Oct. 31, 1944.]

MYRTLE GOTTSTEIN, Appellant, v. GORDON GRAY
et al., Respondents.

Solon S. Kipp and W. E. Starke for Appellant.

Robert W. Kenny, Attorney General, John L. Nourse, Deputy Attorney General, Thomas Whelan, District Attorney (San Diego), and Carroll H. Smith, Deputy District Attorney, as Amici Curiae on behalf of Appellant.

J. Everett Brown and Gray, Cary, Ames & Driscoll for Respondents.

SHINN, J.—In this action to quiet title, judgment was in favor of certain defendants on their cross-complaint and plaintiff was held to have no right, title or interest in or to the real property in question, consisting of 80 feet of land in Seaside Park, Los Angeles County. Plaintiff appeals.

Defendants and respondents are the owners of the property, and the judgment should be affirmed if, as the trial court held, the tax deed under which plaintiff claims title is invalid. Plaintiff's title depends not alone upon the validity of the proceedings leading up to and including the issuance of the tax deed, which are conceded to have been irregular and defective, but also upon the effect of a validating act (Stats. 1943, chap. 458; Deering's Gen. Laws, 1943, Act 8443). The act reads in part as follows: "Every act and proceeding heretofore taken by any county, city and county or the officers thereof relative to the preparation, transmitting, computing, determining or fixing the budget or the tax rate or rates of any county or city and county, or to the assessment or equalization of property or to the levy of taxes thereon or to tax sales or certificates of tax sales, tax deeds or other conveyances resulting from such assessment, equalization and levy, are hereby confirmed, validated and declared legally effective." Other provisions of the act limit its operation to the correction of so-called nonjurisdictional defects, irregularities and errors which might be validated under constitutional principles.

In the proceedings of the board of supervisors to fix

the tax rate for Los Angeles County for the tax year ending June 30, 1929, which was governed by the total amount to be raised, including an amount for delinquencies, the board did not take into consideration the revenue to be raised by the tax on unsecured personal property subject to taxation for that year in fixing the rate on all of the property in the county subject to tax at the rate fixed. At the time of the levy in question, the rate on notes, debentures, shares of capital stock, bonds, solvent credits and mortgages or deeds of trust was 1.45 per cent of the full cash value thereof, as fixed by section 3627a of the Political Code (Stats. 1927, chap. 223), under authority conferred by article XIII, section 12½ of the Constitution, adopted November 4, 1924. Under section 9a of the same article, adopted on the same day, taxes on personal property not secured by real estate for any current year were required to be based upon the tax rate levied upon real property for the preceding year. It was the duty of the board, under section 3714 of the Political Code (Stats. 1927, chap. 435), to adopt a budget of all county expenses, fixing the amount of all appropriations as approved by the board, and to "fix the rate of county taxes designating the number of cents levied for each fund upon each one hundred dollars of assessed value of the county, to raise the amount of the estimated expenditures as finally determined, less the total of the estimated revenues from sources other than taxation . . . and the tax for county and local purposes shall not exceed the amount specified in the budget, after allowing for delinquency as provided by law . . . ." The budget was duly adopted and it included an allowance for delinquencies. It was not within the discretion of the board, in determining the amount to be raised and the rate necessary to produce the amount, to disregard revenue to be derived from taxes on unsecured personal property. It is obvious that a rate which would produce an amount that exceeded the budget requirements by the amount of revenue to be derived from the tax on unsecured personal property would be excessive to that extent. The amount of this excess would have been uniform and the burden would have been borne equally if all classes of property had been affected proportionately by the excessive rate. This was not the case, as the rates on the classes specified in section 3627a of the Political Code and article XIII, section 9a of the Constitution were fixed by law and the entire burden of the

excess amount necessarily fell upon the other classes of property, which were subject to the rate. In *Otis* v. *Los Angeles County* (1937), 9 Cal.2d 366 [70 P.2d 633], there was considered the validity of a levy which was excessive in the amount of revenue to be derived from the tax on solvent credits and securities which were taxable at a fixed rate. The board of supervisors had failed to deduct the amount of this anticipated revenue from the total amount to be raised as fixed by the budget. It was said (p. 370): ''It is obvious that after the amount of all appropriations was fixed by the board of supervisors, so that the amount of money to be raised from all sources was known, a tax levy raising this amount solely on real and secured personal property and completely disregarding such a known material source of revenue, necessarily resulted in an excessive levy on the real and secured personal property.'' And the court said further (p. 373): ''It seems clear that after the valuations are fixed, and the sources of income and the amounts thereof are known, and after the board determines the amount to be spent, the fixing of the tax rate involves no discretion at all. After all the factors are known, the fixing of the rate is merely mathematical calculation. The board has no 'legislative' or other kind of discretion to make this calculation other than the science of mathematics dictates. Nor has it 'discretion' to make a mathematical error. Nor has it power to raise by taxation materially more than is required for expenditures except as permitted by law. It is true that any tax rate, made up as it is of various items each assessed separately, and expressed in a rate of four decimal places, will not produce exactly the amount of all the appropriations. There is usually a slight excess—but that is made necessary because of the limitations of the formula applied, and to the extent of that excess the levy is valid.'' We have the same situation except that in the instant case the board failed to take into account the revenue to be derived from the tax on unsecured personal property, whereas in the Otis case the board had failed to deduct the revenue anticipated from a levy on solvent credits and securities. The rate we are considering applied only to real property and secured personal property. Since the rate on unsecured personal property was required to be the rate for the preceding year, the excess amount was derived solely from the tax on real property and secured personal property. While the amount of the excess is not in evidence, it may not be doubted that

it was a substantial amount and one that materially affected the tax rate. In the Otis case the plaintiff was awarded judgment for the amount he had paid above the amount which would have been payable had the levy been at a legal rate, the tax being held invalid as to such excess. The court cited and discussed the case of *Redman* v. *Warden* (1928), 92 Cal.App. 636 [268 P. 686], approving the reasoning in that case. We think it is in point here. The suit was to quiet title against a tax deed. The levy which led up to the deed was in part for school taxes for the Antelope Union High School District, which included the Esperanza School District and the Redman School District, the land in question being within the latter. From the levy made for the Antelope Union High School District the property within the Esperanza district was omitted and the whole tax was levied upon the remaining property in the union district, thereby increasing the proportion paid by property within the Redman district. The tax deed was held void. We have here a levy imposing upon the owners of real property and secured personal property a tax which was excessive in an amount equal to the revenue to be derived from the tax upon unsecured personal property. In the Redman case the court quoted from 1 Cooley on Taxation, fourth edition, section 317, as follows: " 'The constitutional requirement of equality and uniformity is violated by imposing a tax on one portion of the state for the benefit of the whole state, or on one portion of a county for the benefit of the whole county, or one part only of any taxing district for the benefit of the whole taxing district.' This is what seems to have been done in the present case, rendering the tax invalid." Although the irregularity in the Redman case consisted of the failure to include in the levy all property in the Union district, the invalidity of the proceeding was due to the fact that the tax burden was lacking in equality and uniformity. The principle involved was the same as that in the Otis case and in our case. The board exceeded its authority in the proceedings to fix the tax rate, and therefore the levy, the sale and the deed issued thereunder, were invalid.

■ We then have the question whether the levy at the excessive rate was an irregularity that could be cured by the act of 1943 first herein quoted. If the method pursued by the board of supervisors had been one which could have been authorized by the Legislature, it would have been competent

for the Legislature to validate the proceedings even though they did not conform to the procedure as laid out in section 3714 of the Political Code. The budget feature of the procedure was first provided for by Statutes 1927, chapter 435. ▪ The Legislature may, if it sees fit, do away with a budget plan and adopt another, and it may validate defective proceedings under the budget plan, except where the omitted steps were necessary to constitute due process of law or to comply with any other constitutional prerequisite. (*Chase* v. *Trout* (1905), 146 Cal. 350, 359 [80 P. 81].) ▪ Our inquiry is as to the nature of the right of the taxpayer which has been disregarded in the proceeding sought to be validated —whether the defect or irregularity went to a right of substance which the Legislature was bound to protect. Section 1 of article XIII of the Constitution provides: ''All property in the state except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided. . . .'' The valuation to be placed on unsecured personal property was within the control of the county assessor and the board of supervisors, but the rate, being fixed by the Constitution at the rate on real property for the previous year, was inflexible. The amount of the levy in excess of that needed to meet budget requirements as established by the board was not and, within constitutional limitations, could not have been collected, even in part, by the tax on unsecured personal property. The rate was fixed and the property was assessable and had been assessed at its true value, as fixed by the assessor and the board. The values placed upon real property and unsecured personal property had likewise been fixed and determined. As already stated, the rate on solvent credits and securities was fixed by law and the valuations to which the rate applied had been determined. All of this was in accord with one entire plan of taxation, under which the rate upon unsecured personal property was fixed by the Constitution, and the rate upon solvent credits and securities had been fixed by the Legislature under authority of the Constitution. The lawful rate on real property and secured personal property, as an essential part of the plan, was the one which, as applied to the fixed valuations of such property, would produce the amount required by the budget, less the revenue to be derived from the tax on unsecured personal property. Other specified deductions are not involved in our

question. Under such a rate upon real and secured personal property all classes of property would be taxed in proportion to the values placed upon the respective classes at rates authorized by the Constitution and there would be the uniformity and equality which are required under constitutional principles. ■ The constitutional requirement that property shall be taxed in proportion to its value necessarily applies to the rate of taxation as well as to the matter of valuation. The rates upon the several classes of property under discussion, although different, are permissible because the Constitution makes those classifications and either fixes or authorizes the rates. ■ But under the method pursued by the board there was not the equality and uniformity which is required by article XIII, section 1, of the state Constitution, and the Fourteenth Amendment of the Constitution of the United States. The burden upon the owners of real and secured personal property was unduly heavy because of the excessive rate. The result was the same as if the board had arbitrarily made a blanket increase of the assessed valuations of that class of property and had fixed a lower rate that would have produced the same amount of revenue as the higher rate at the original valuations. The taxes upon unsecured personal property and upon solvent credits and securities would, in such circumstances, be in proportion to their true value, while the valuations placed upon real property and secured personal property would be false, excessive, and plainly illegal. The result of using the excessive rate which the board adopted was that the owners of real property and secured personal property alone contributed to the county revenue by way of taxes for the year 1928-29 an excessive amount equal to the revenue to be derived from the tax on unsecured personal property, and to that extent the levy was not in proportion to the value of their property but was in excess of a fair and just proportion. The erroneous method followed by the board could have been validated only if it could have been authorized by the Legislature in the first instance. For the reasons stated, it could not have been prescribed by the Legislature because it violated the constitutional mandate that all property not exempt from taxation must be taxed in proportion to its value. ■ That is a broad requirement, which calls for equality and uniformity in the sharing of the burden of taxation. There can be no equality under a system which would permit the exaction of an excessive amount from one class of taxpayers while other

classes paid less than their just and lawful proportion of the total tax for a given year. Under the facts of the instant case there could have been no equality and uniformity unless each class of property had paid a proportionate share of the excess, at the rates applicable to the several classes.

Section 2b of the validating act reads as follows: "This act is limited to the validation of acts and proceedings to the extent to which the same can be effectuated under the State and Federal Constitutions." The act was not intended to and could not operate to validate proceedings which were void because taken in disregard of constitutional rights.

It is unnecessary to discuss other irregularities and defects in the proceedings upon which respondents rely for affirmance of the judgment.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 28, 1944. Gibson, C. J., and Traynor, J., voted for a hearing.