[Civ. No. 3608. Fourth Dist. Sept. 18, 1946.]

GRIFFITH COMPANY (a Corporation), Appellant, v. JOHN BELCHEZ et al., Defendants; ELSIE FORREST GILLETT, Respondent.

[Civ. No. 3609. Fourth Dist. Sept. 18, 1946.]

GRIFFITH COMPANY (a Corporation), Appellant, v. MORGAN S. RICE et al., Respondents.

Solon S. Kipp and W. E. Starke for Appellants.

Virgil S. Kipp for Respondents.

GRIFFIN, Acting P. J.—These two actions to quiet title were filed in the superior court in February, 1945, and separate judgments were rendered in each case. By stipulation they were consolidated for the purpose of this appeal. The facts are identical in each, except for the description of the property involved, and both actions involve the validity of the 1931-1932 tax levy.

In the Gillett case defendant Gillett claims title under a tax deed to the state dated July 1, 1937, a tax deed from the state to defendant Belchez dated November 1, 1944, and a quitclaim deed from Belchez to her dated December 20, 1944.

In the Rice case, defendant and respondent Rice claims under a tax deed to the state dated July 1, 1937, and a tax deed from the state to him dated February 6, 1945, all for the non-payment of the taxes for San Diego City, County and High School Districts.

The tax deeds *to the state,* recorded on July 22, 1937, are directly involved under the attack. It was stipulated at the trial that plaintiff and appellant Griffith Company, a corporation, is the owner of the property described unless deprived of it by virtue of the tax deeds in question. It is contended by plaintiff company that the city of San Diego and the San Diego School Board did not establish the proper and legal tax rate for the reasons: (1) That they failed to take into account items of collection for redemptions and unsecured personal property collections for past years, which amounted to more than the 10 per cent usually allowed for delinquent assessments; and (2) that the tax rate of the city of San Diego was void for the reason that unsecured property valuations were not considered.

Defendants argue: (1) That any claimed defects in the tax proceedings were validated by the 1943 and 1945 Curative Acts (Stats. 1943, ch. 458, p. 1993; 3 Deering's General Laws, Act 8443, p. 2994; and Stats. 1945, ch. 1134; Deering's General Laws, 1945 Supp. Act 8443a, p. 67); (2) that plaintiff's actions are barred by section 3521 of the Revenue & Taxation Code; and (3) that the city tax rate and school rate for the year 1931-1932 were not excessive, illegal or void.

The evidence shows that there was apportioned to the San Diego City Tax Trust Fund for the fiscal year 1931-1932, $169,727.47 for redemption of real property, and $122,928.82 from the collection of unsecured personal property taxes, totaling $292,656.29, and that the city made a request for a

budget allowance of $4,633,562 to be raised by taxation, less a credit of $1,731,190 "received from other sources," i. e., "revenue from departments." From this evidence it is contended that the $292,656.29 was not taken into consideration in fixing the rate, and had it been so considered the rate would have been correspondingly lower. The same accusation is advanced as to the high school district, i. e., that according to the evidence, there was apportioned to the school district $42,310.39 from unsecured personal property collections, and $45,758.17 from redemption of real estate; that the budget showed a total need of $748,440 to be raised by taxation and that the collections above mentioned were not taken into consideration when fixing the tax rate; that only 10 per cent variance is usually allowed in such calculations and that the failure to reasonably anticipate the estimate of income from the two sources mentioned was an "unconscionable abuse of power" and an "unreasonable extortion of tax from a taxpayer," citing such cases as *Gottstein* v. *Gray,* 66 Cal.App.2d 587 [152 P.2d 742]; *Otis* v. *Los Angeles County,* 9 Cal.2d 366 [70 P.2d 633]; Stats. 1945, ch. 1134, § 4, p. 2176.)

Defendants claim that plaintiff's whole argument is predicated upon an erroneous assumption that the city, in preparing the budget and fixing and levying the tax of $2.17 per $100 for the fiscal year 1931-1932, failed to take into consideration the unsecured personal property valuation and unsecured personal property redemption funds.

The record shows that the city, by ordinance, elected to have the city taxes collected by the county, under Statutes 1895, page 219, chapter 182, which act provides that the county assessment shall be used as a basis for the levying of such city taxes, and the acts of the board of supervisors are, by the act, declared to be valid assessments of such property and a valid levy of such rates so fixed. The auditor transmitted to the city council "a statement in writing showing the total assessed value of all property" within the city of San Diego as "ascertained from the assessment books of the County," and such statement was used by it in determining the amount that might be necessary to be raised by taxation to cover the budget estimate. The amount of the assessed value is not set forth in either of the city ordinances fixing the budget or rate, and nowhere in the record is there any evidence as to what property or items were included in the total assessed value set forth in the auditor's statement. The evidence shows that $4,633,562

was necessary to be raised for the year; that $1,731,190 was the revenue estimated to be raised from departments, i. e., from sources other than taxation, leaving $2,902,372 "to be raised by taxation upon the taxable property therein." It does not affirmatively appear that the unsecured personal property or the city's proportionate share of the collections on unsecured personal property or redemptions were omitted from consideration in preparing and adopting the city budget for that year. Whether or not the total assessed value "of all property within the City," as shown by the statement of the auditor, included the unsecured personal property, or whether he made the usual allowance for delinquencies under section 3714 of the Political Code, subdivision 5, is not in evidence. The auditor's statement is not in evidence and was not before the court. Whether the collections from redemptions and unsecured personal property were included in the item of $1,731,190 as "revenue from departments" or "income from sources other than taxation" is not affirmatively shown.

If plaintiff is to prevail under the showing made, the result of this proceeding would be to invalidate the assessment roll of San Diego County for the fiscal year 1931-1932 in this respect. Such a result should not be adjudged except on a clear showing of arbitrary and wilful disregard of the law intended for the guidance of the taxing authorities. (*Rittersbacher* v. *Board of Supervisors,* 220 Cal. 535, 542 [32 P.2d 135] ; *Strong* v. *Mack,* 64 Cal.App.2d 739, 742 [149 P.2d 401].)

The Charter of the City of San Diego provides (Stats. 1931, p. 2885, §§ 68 and 69) that the city manager shall submit a budget of the expense of conducting affairs of the city showing the total proposed expenditures and the total anticipated income. Copies are to be prepared and distributed to citizens, newspapers and libraries. Section 70 provides for the annual appropriation ordinance using the budget estimate as a basis, and by the terms of that section provision is made for public hearings upon the appropriation ordinance, at which time the council may reduce or eliminate any item. Section 75 provides that the council shall finally adopt an ordinance levying a tax sufficient to raise the amount estimated in the final budget less the amount estimated to be received from other sources. There is a presumption that "official duty has been regularly performed" (Code Civ. Proc., §1963 subd. 15.)

We therefore must assume that the taxpayer had notice of the public hearing respecting the items set forth in the budget, and, so far as the record before us shows, no objection thereto

was made at that time or at the time of the adoption of the budget and the fixing of the tax levy. The first objection made by plaintiff to such budget comes 13 years after its adoption.

A similar question was presented in the case of *Strong* v. *Mack, supra,* and it was there said that the notice and hearing there given was sufficient to constitute due process of law and that the failure of the appellant to avail himself of the opportunity to have the omissions of which he complains corrected constituted a waiver to object later to the consideration of the budget with respect to all matters included in or omitted therefrom which could have been questioned at the hearing. (See, also, *City of Compton* v. *Boland,* 26 Cal.2d 310 [158 P.2d 397] ; *Wall* v. *State of California,* 73 Cal.App.2d 838, 843 [167 P.2d 740].)

Plaintiff advances much the same argument in regard to the High School District budget and tax levy as it does with reference to the city budget and tax levy, and what we have said here as to the city budget equally applies to the school budget, as the statutes are somewhat similar in that respect. The school budget introduced by plaintiff, so far as pertinent here, reads in part: "I herewith submit with my approval the budget of the San Diego High School District, together with the following statement of the estimated income for said District for the ensuing year: . . . . C. Estimated receipts from County . . . $332,200. . . . G. Total estimated receipts from all sources . . . $1,111,383." Just what items were included in the estimated receipts from the county are not shown by the budget. It might be readily inferred that the $332,200 included the estimated unsecured personal property collections and the estimated redemptions, and that these amounts complained of as being omitted were considered in fixing the high school budget and levy. The law with reference to the preparation of the high school budget and tax levy, publication of time fixed for a taxpayer to appear and object thereto, as well as the financial reports and statements of the high school district, applicable to this action, is found in the School Code of 1929 (Stats. 1929 (Supp.) p. 168, art. VII, §§ 4.360 to 4.376, and Stats. 1929 (Supp.) ch. 709, pp. 353 and 354, §§ 4.380 to 4.384. See, also, Deering's Sch. Code, 1937, pp. 274 to 279, art. VII et seq.) As shown therein, the preparation of the budget is open to the public and any taxpayer had the right to appear and object, as he also had a right to appear at the hearing of the county budget. (Pol. Code, § 3714, as then in

effect (Stats. 1929, p. 1129).) Not objecting, he is barred from complaining with reference thereto at this late stage, as decided in the cases heretofore cited with reference to the city.

Under the latest decisions, the 1943 and 1945 curative or validating acts above cited are here applicable. It was said in *Miller* v. *McKenna*, 23 Cal.2d 774, at pages 781 and 782 [147 P.2d 531] : "The Legislature may cure irregularities or omissions to comply with provisions of a statute which could have been omitted in the first instance," excepting jurisdictional requisites or Constitutional inhibitions, and such curative acts are effective as to pending litigation. (See, also, *Chambers* v. *Duvall*, 26 Cal.2d 139 [156 P.2d 921] ; *City of Compton* v. *Boland, supra; Barrett* v. *Brown*, 26 Cal.2d 328 [158 P.2d 567] ; *Mais* v. *Poinsettia Land Co.*, 71 Cal.App.2d 347, 349 [162 P.2d 925] ; *Wall* v. *State of California, supra*, p. 844; *Zaslow* v. *Kroenert*, 29 Cal.2d 539 [176 P.2d 1] ; *Cooper* v. *Los Angeles Home Co.*, 74 Cal.App.2d 766 [169 P.2d 963].)

In *Gottstein* v. *Gray, supra*, citing *Chase* v. *Trout*, 146 Cal. 350, 359 [80 P. 81], it was said that the Legislature may, if it sees fit, do away with a budget plan and adopt another, and it may validate defective proceedings under the budget plan, except where the omitted steps were necessary to constitute due process of law or to comply with any other constitutional prerequisite.

The errors complained of by plaintiff in its attack on these tax deeds have been cured by the Curative Acts of 1943 and 1945, if they ever were sufficient to invalidate them. None of the purported defects violated the due process clause of our Constitution, and since the Legislature could have done away with the budget plan in the first instance, such defects were therefore validated.

It appears from a reading of section 3521 of the Revenue and Taxation Code, that defendants' final argument has some merit, i.e., that the one-year statute of limitation had run prior to the filing of this action, particularly insofar as it relates to the validity of the tax deeds *to* the state. It reads:

"A proceeding based on an alleged invalidity or irregularity of any deed to the State for taxes or of any proceedings leading up to the deed can only be commenced within one year after the date of recording of the deed to the State in the county recorder's office or within one year after June 1, 1941, whichever is later."

However, in view of the conclusion reached in reference to the Curative Acts, it becomes unnecessary to determine this point. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269 [138 P.2d 673, 147 A.L.R. 1111] ; *Title Guarantee & Trust Co.* v. *Woody,* 63 Cal.App.2d 209 [146 P.2d 252].)

Judgments affirmed.

Marks, J., concurred.