[S. F. No. 20649.   In Bank.   June 4, 1962.]

FOOTHILL JUNIOR COLLEGE DISTRICT OF SANTA CLARA COUNTY, Plaintiff and Appellant, v. BOARD OF SUPERVISORS OF SANTA CLARA COUNTY et al., Defendants and Respondents.

Richard H. Perry for Plaintiff and Appellant.

Spencer M. Williams, County Counsel, and Selby Brown, Jr., Deputy County Counsel, for Defendants and Respondents.

DOOLING, J.—This appeal presents the question of the rights of the parties with respect to surplus tax funds collected in plaintiff district by defendants to pay tuition to certain other junior college districts.

There is no dispute as to the facts. Pursuant to an election, plaintiff district was established on July 1, 1957. During the school year July 1, 1956, to June 30, 1957, residents in plaintiff district sent their children to junior colleges outside of the district area. Under the then law, the county in which the nonjunior college district area was situated was required to impose a special tax on the residents of that area to establish a junior college tuition fund. (Ed. Code, §§ 7231, 7232; now §§ 20201, 20202.) This fund was then used to reimburse the junior college districts for the full tuition costs of the children in attendance from the nonjunior college district areas. The tax for the fund was imposed to pay for attendance during

the preceding year rather than for the current year, and in theory it should yield the amount necessary to defray the junior college tuition obligations without producing a surplus.

Plaintiff district represented approximately 44 per cent of the nonjunior college district area in Santa Clara County. For the school year July 1, 1957, to June 30, 1958, residents of plaintiff district paid two sets of taxes: one was to support plaintiff, a new junior college district, during the first year of its operation; the other was its share as formerly a part of a nonjunior college district for tuition costs owing to junior college districts for the preceding year. After such reimbursement was made for those districts, it was found that there was a surplus of $35,793.23. According to past years' practice, such surplus would be applied to the next year's tuition costs so as to lower the tax rate for the entire nonjunior college district area. Of the above-stated surplus 44.43 per cent or $15,902.93 was attributable to the area of plaintiff district. Plaintiff now as a legal entity seeks a declaration of its right to this sum.[1] The trial court ordered a denial of plaintiff's motion for a judgment on the pleadings and granted a summary judgment to defendants.

The question arises in this way. The governing statute by its express terms required the levy of a tax "upon all taxable property in the county *not situated in any junior college district*" (Ed. Code, § 7232; Stats. 1955, p. 3369; emphasis added) to reimburse other junior college districts for the children in attendance in such districts from the nonjunior college areas of the county during the preceding year. This statute, and its predecessor statute considered in *Pasadena Junior College Dist.* v. *Board of Supervisors*, 216 Cal. 61 [13 P.2d 678], only made provision for the levy of such tax on property "not situated in any junior college district" and thus by its terms would exclude a tax on property in a newly formed junior college district even though during the preceding year such property was not in any junior college district, and but for its incorporation into the newly formed district would be liable for its proportion of such tax. In view of the obvious unfairness of this result, we held in the Pasadena case that in conformity with the "spirit of our laws, which seek to

---

[1] While in its complaint plaintiff asked for affirmative relief in addition to a declaration of its rights, on this appeal plaintiff has abandoned its claim for other affirmative relief and asks only for a declaratory judgment. (Appellant's Reply Brief, p. 4.)

impose upon all property in the state its just proportion of taxation," it would be inequitable for the area "embraced within the newly organized" district not to pay the obligations incurred during the preceding year for the education of its junior college students in other districts (216 Cal., p. 72), and accordingly issued our writ of mandate in that case to compel the levy of such tax on the property within the newly formed district.

Theoretically such tax should only be sufficient to raise the exact amount needed to meet the specific obligation. Practically, of course, no such perfection can be expected of any human operation subject to the uncertainties inherent in the taxing process. The result has been a surplus in the tax funds actually collected, which normally is carried forward to reduce the amount needed to be raised for the same purpose in the succeeding year. However, plaintiff district has no such obligation for the succeeding year and if the excess of $15,902.93 is used for that purpose, plaintiff's taxpayers will to that extent be contributing to the payment of an obligation to which they have no legal obligation to contribute. Since, as we held in Pasadena, equity required its taxpayers to contribute to the satisfaction of a particular obligation and that obligation has now been fully satisfied, plaintiff argues that equity equally demands that the excess of its taxpayers' contribution to the fund for that purpose should now be used for the benefit of the school district in which it was raised, and not for the benefit of the taxpayers of the still nonjunior college areas of the county for which plaintiff's taxpayers no longer have any legal responsibility.

We are persuaded that under the peculiar facts of this case this argument is sound. The particular tax in question is not a general ad valorem tax imposed to meet the general obligations of local government, where presumably the community as a whole benefits from the governmental services supported by the tax collected. (*People* v. *City of Palm Springs*, 51 Cal.2d 38, 47-48 [331 P.2d 4].) Rather it is a specific tax levied for a single purpose and that single purpose having been fully satisfied, the taxpayers in plaintiff district will clearly receive no benefit from the surplus contributed by them unless that surplus is returned to plaintiff district. Application of the surplus to the benefit of the areas in the county still not within a junior college district will result in plaintiff's taxpayers paying an obligation for which

they have no legal liability and for which they can receive no possible governmental service in return.

Defendants argue that the Legislature has provided specifically for the distribution of surplus school funds in other situations but has made no provision in the case of any surplus in the junior college tuition fund, which would indicate that no such transfer as plaintiff seeks was intended. Thus, when a lapsed elementary school district is merged into another district, its funds are transferred. (Ed. Code, § 1880.) Where there is a school district fund surplus, 80 per cent of it may be transferred to the county school service fund. (Ed. Code, § 20104.) Any "unnecessary surplus" in the county school tuition fund may be transferred to the county school service fund. (Ed. Code, § 20162.) There may be a transfer of funds of a school district library to the county library if the former becomes a branch. (Ed. Code, § 7202.)

But the special tax here rests on a different premise entirely. The county superintendent of schools computes the total cost of education from the preceding year for junior college students living in nonjunior college areas. (Ed. Code, § 7231; now § 20201.) That is a fixed and certain amount already established, and not, as in most estimates for tax purposes, an approximation of future expenditures. From this amount the county controller deducts the surplus that is currently in the fund, and the remainder is the sum which must be raised in the tax levy. He then determines the total assessed value of all taxable property on the secured roll and reduces this figure by 2 per cent as a delinquency factor. The result of this computation is divided into the amount that must be raised, and the quotient is the rate of tax to be levied. Under this method the 2 per cent delinquency factor is doubtless a reasonable estimate based upon experience, but as a matter of fact the amount raised is never precisely the amount needed and a residual will usually result. (*Otis* v. *Los Angeles County,* 9 Cal.2d 366, 373 [70 P.2d 633]; *American Securities Co.* v. *Forward,* 220 Cal. 566, 576-577 [32 P.2d 343, 96 A.L.R. 1268].) Yet the statute provides that the special tax is only to be "sufficient in amount to defray" the specified junior college tuition costs (Ed. Code, § 7232; now § 20202) and in the absence of any express method for its calculation, there is nothing to indicate that the Legislature even contemplated that there would be a surplus so as to be assigned any intent as to its disposition. Normally, the surplus from one year

would be deducted from the next year's tax, and the taxpayers in the entire area as continuing residents of a nonjunior college district would receive the progressive benefits from year to year. But this now is not the case here since the taxpayers of plaintiff district no longer qualify for surplus moneys retained for the education of junior college students in areas not within a junior college district, and any "temporary inequalities arising from cumulative" levies would never "be ironed out and equalized." (*American Securities Co.* v. *Forward, supra,* 220 Cal., p. 577.)

The question involved in this litigation is one which will not recur. In 1959 section 20211 of the Education Code was adopted. (Stats. 1959, p. 4761.) This section provides, in effect, that the state shall bear a new junior college district's obligation to other districts for the cost of educating its junior college students in the preceding year instead of having, as theretofore, the levy of such tuition tax as here was done. By such enactment the Legislature has enunciated a policy against the double taxation feature previously prevailing in the first year of a newly formed junior college district's existence. While the statute applies prospectively, there appears to be no reason why its policy should not, as far as possible, have some retrospective force.

Since plaintiff is only asking for a declaratory judgment, we are not here concerned with any question of its possible remedies to recover the sum involved in view of defendants' assertion that the "fund" resulting from the surplus of $15,902.93 here in issue has now been expended. Nor are we concerned with hypothetical cases involving the annexation of a portion of one school district to another and other such situations suggested by defendants. We limit our decision to the peculiar facts of this case and hold simply that this $15,902.93 which was raised by taxation for one specific purpose from the taxpayers of plaintiff district and proved not to be needed for that specific purpose, in equity and good conscience became the property of the junior college district whose specific obligation it was raised to meet.

In view of this conclusion plaintiff district is a proper party plaintiff to assert this right as trustee of the school district funds. (*Butler* v. *Compton Junior College Dist.*, 77 Cal.App.2d 719, 729 [176 P.2d 417]; *Pomona City School Dist.* v. *Payne,* 9 Cal.App.2d 510, 516 [50 P.2d 822]; see also *Hall* v. *City of Taft,* 47 Cal.2d 177, 181-182 [302 P.2d 574].)

The judgment is reversed with directions to enter judgment on the pleadings declaring plaintiff's rights in accordance with this opinion.

Schauer, J., McComb, J., Peters, J., and White, J., concurred.

TRAYNOR, J.—I dissent.

Plaintiff does not seek relief on the basis of any right of individual taxpayers to recover the surplus in question. They have no such right. The tax was valid when levied (*Rancho Santa Anita, Inc.* v. *City of Arcadia*, 20 Cal.2d 319, 324-326 [125 P.2d 475]), and was not invalidated when some taxpayers received less benefit from the use of the funds raised than other taxpayers. (*Anaheim Sugar Co.* v. *County of Orange*, 181 Cal. 212, 217 [183 P. 809] ; see 16 McQuillin, Municipal Corporations (3d ed.) § 44.47, pp. 127-128.)[1] Thus, by organizing a new junior college district (Ed. Code, §§ 2551-2570), owners of property therein could not make the tax invalid or create a right to any of the proceeds thereof on the ground that they will not get the benefits of the surplus that other taxpayers of Santa Clara County will get whose property is not within the new district.

Nor has plaintiff any legal right to the surplus. The tax was levied by the county for county purposes and when collected was county property. County property belongs to the state, and the legal title is held by the county as trustee for the benefit of its residents. (*County of Los Angeles* v. *Graves*, 210 Cal. 21, 25 [290 P. 444].) Similarly, school district property belongs to the state, and the school district has the same powers and responsibilities with respect to it that counties have with respect to their property. (*Hall* v. *City of Taft*, 47 Cal.2d 177, 181-182 [302 P.2d 574] ; *Pass School Dist.* v. *Hollywood etc. Dist.*, 156 Cal. 416, 418 [105 P. 122, 20 Ann. Cas. 87, 26 L.R.A. N.S. 485].) The proceeds of this tax were county property when they first came into the county treasury. At no time has the junior college tuition fund or any part thereof been changed from county property to junior-

---

[1]The 1957 tax levy raised $714,661.44, and the surplus carried over from the 1956 tax was $31,445.71. After expenditures of $710,313.93 for the school year 1956-1957, the fund contained a surplus of $35,793.22. Property owners in plaintiff's territory therefore received the same benefits as other property owners in the county from 95.2 per cent of the fund. As to the remaining 4.8 per cent, those in plaintiff's territory are no differently situated from others in the county who derived no direct benefit from the junior college tuition fund or a part thereof.

college-district property. The county is still trustee of this fund, and plaintiff has no legal claim thereto. What plaintiff is seeking is a transfer of funds from the county as trustee to it as trustee on the ground that a part of the surplus was acquired from property owners within its boundaries and although such owners have no right to recover the surplus they should get it indirectly through the reduction in their taxes for the support of plaintiff that could result from its acquisition of part of the surplus.

Such transfers can be made if authorized by statute. Thus, the holding in *Pass School Dist.* v. *Hollywood Dist., supra,* that when a new school district is carved out of an old one, title to property located in the new district is transferred to it, was based on a statutory provision vesting in school districts management and control of school property located within their boundaries. (P. 418.) The court noted that "in the absence of such provision, the rule of the common law obtains, and that rule leaves the property where it is found. . . ." (P. 419; *Hughes* v. *Ewing,* 93 Cal. 414, 417-418 [28 P. 1067].) This rule applies here, for there is no statutory provision for the transfer of these funds from the county to plaintiff. Not only is there no provision for such a transfer, but the statutes expressly direct the use to which the funds are to be put and the manner in which they are to be administered. (Ed. Code, §§ 20204-20208.) The county has adhered to these statutory directions, as it was obliged to do, and has expended the surplus in question for the junior college education of its residents in the school year 1957-1958. Education Code section 20201 specifies the educational expenses to be paid from the junior college tuition fund, and section 20202 authorizes the board of supervisors to levy a tax "sufficient in amount to defray all amounts specified in subdivisions (a), (b), and (c) of section 20201." There is no authority for a tax levy to pay this judgment or any other costs from the junior college tuition fund that are not specified in section 20201. Payment of the judgment out of the county's general fund, which is raised by taxes levied on all property in the county, would defeat the purpose of the judgment, for it would require property owners in plaintiff's territory to pay nearly half the judgment themselves even though it is intended for their benefit against other property owners in the county.

*Pasadena Junior College Dist.* v. *Board of Supervisors,* 216

Cal. 61 [13 P.2d 678], on which plaintiff relies, does not support its contention that it has an equitable right to recover the surplus independent of any statute on the ground that the surplus was created by a tax levy not authorized by statute but required only by equitable principles. That case involved the construction of Education Code section 7232 (now § 20202) exempting from taxation for the junior college tuition fund property "situated in any junior college district." That phrase was held to refer to the time at which the expenses payable from the junior college tuition fund were incurred rather than the time at which the tax therefor was levied. It is true that the court chose the more equitable interpretation of this language, but there can be no doubt that it was the statute and not equitable principles independent thereof that compelled the result in that case.

The Legislature is aware of the problem of allocating surplus tax funds such as those in issue here. Education Code sections 20151 through 20162, for example, provide for the county school tuition fund to pay the expenses of California students attending school in adjoining states. This fund, like the junior college tuition fund, is created by a special ad valorem tax levied in one year to pay the costs incurred in the previous year. Section 20162 directs the county superintendent of schools, with the approval of the county auditor, to "transfer any unnecessary surplus in the county school tuition fund to the county school service fund [see Ed. Code, §§ 20101-20109] whenever in his judgment the surplus will not be needed for the payment of tuition." There is no similar provision for the transfer of a surplus in the junior college tuition fund. Moreover, in 1959 the Legislature added section 20211 to the provisions of the Education Code relating to the junior college tuition fund. That section eliminated the procedure under which owners of property in a new junior college district would be taxed twice during the first year of the district's existence—once by the district and once by the county for the prior year's expenses payable from the junior college tuition fund. The Legislature did not provide, however, for the apportionment of that fund or any surplus therein between the county and a new district. Inasmuch as the contribution to be made by the state under this section is to be "the difference between the amount which would have been raised [in the new district] in such year if a special tax

had been levied in such territory pursuant to Section 20202, and the amount which actually was or will be raised in such year from the levy of the special tax required by this paragraph," a surplus, attributable in part to the state, in part to property owners in the new district (if the junior-college-tuition-fund tax rate exceeds that of the district), and in part to other property owners in the county, is as likely to arise in the future as in the past, for delinquencies can never be estimated exactly.[2] By providing for apportionment of any such surplus the Legislature could have reduced substantially the state's contribution to the fund. It is significant that, having made provision for disposition of like surpluses in similar funds, and having had this problem before it in 1959, the Legislature did not provide for such apportionment. "It is not our province to weigh the desirability of the social or economic policy underlying the statute or to question its wisdom; they are purely legislative matters." (*Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 146 [346 P.2d 737].)

The judgment should be affirmed.

Gibson, C. J., concurred.

Respondents' petition for a rehearing was denied June 27, 1962. Gibson, C. J., and Traynor, J., were of the opinion that the petition should be granted.

---

[2]For example, assume that the county levies a junior-college-tuition-fund tax of one cent per $100 assessed property valuation, that the new district levies a district tax of one-half cent per $100 assessed property valuation, that the total assessed value of all property in the county is $100,000,000, and that half of it is in the new district. Under the old procedure property owners in the new district would pay both taxes in full, or a total of $7,500, $5,000 of which would be paid to the county and $2,500 to the district. Other property owners in the county would pay only the county tax, or a total of $5,000 to the county. Under the new procedure property owners in the new district would pay a total of $5,000 of which $2,500 would be paid to the county and $2,500 to the district. The state would make up the difference between what they paid to the county and what they would have paid to the county under the old procedure, or $2,500. A surplus is as likely to arise from an over-estimate of delinquencies under either procedure. If, for example, the surplus were $1,000, under the new procedure $250 would be attributable to the state, $250 to the property owners in the new district, and $500 to other property owners in the county. Under the majority opinion the state as well as the new district would be entitled to $250. Had the Legislature intended any such disposition of the surplus it would have so provided.