[Civ. No. 8561.   Fourth Dist., Div. One.   Sept. 20, 1967.]

STATE OF CALIFORNIA EX REL. ALAN CRANSTON, as Controller, etc., Plaintiff and Appellant, v. COUNTY OF SAN DIEGO, Defendant and Respondent.

Thomas C. Lynch, Attorney General, and Richard L. Mayers, Deputy Attorney General, for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel, and Donald L. Clark, Deputy County Counsel, for Defendant and Respondent.

COUGHLIN, J.—The State of California, as plaintiff, appeals from a judgment denying recovery of an alleged overpayment to the County of San Diego, defendant, for the Junior College Tuition Fund, arising out of the apportionment of state funds pursuant to Education Code section 20211.

The Education Code provides a method for financing the education of junior college pupils not residing in any school district maintaining a junior college. The county superintendent of schools is directed, not later than August 8th of each year, to certify to the board of supervisors and the county auditor the amounts of designated items of expense for educating non-district junior college pupils during the preceding fiscal year. (Ed. Code, § 20201.) The board of supervisors is required to levy a tax "upon all taxable property in the county not situated in any school district maintaining a junior college, sufficient in amount to defray" the amounts so certified. (Ed. Code, § 20202.) The tax, when collected, is paid into the county treasury and placed in the college tuition fund (Ed. Code, § 20204), which is apportioned among the school districts educating the non-resident junior college pupils. (Ed. Code, § 20205.) However, Education Code, section 20211 provides the tax shall not be levied upon property in a newly formed junior college district during the first fiscal year it is effective for all purposes, and the state shall pay into the tuition fund the amount which would have been raised if the tax were levied. Particularly pertinent to the issues at hand are the provisions of section 20211 that: "The county auditor shall . . . determine and report to the county superintendent of schools the amount which would be raised if the tax prescribed by Section 20202 [viz., the non-district pupil special tax] were levied in such territory during such year"; the county superintendent shall report such amount to the state superintendent of instruction, who shall certify the amount to the state controller; the latter shall draw his warrant upon the general fund "in the amount certified", payable to the county treasurer; and the county treasurer shall deposit the amount in the Junior College Tuition Fund.

During the fiscal year 1961-1962 the newly formed Grossmont and Sweetwater Junior College Districts, in the County

of San Diego, became fully effective within the meaning of section 20211. The amounts of the items of expense for non-resident junior college pupils in the County of San Diego during the fiscal year 1960-1961, as certified by the superintendent of schools pursuant to section 20201, totalled $1,412,-397.28. In September 1961, the county superintendent of schools reported to the state Superintendent of Public Instruction: "In relation to the State General Fund apportionment to our Junior College Tuition Fund per Education Code 20211 our County Auditor has determined the amount of tax which would be raised if the tax were levied in the Grossmont and Sweetwater Junior College Districts" was $1,092,208.48; the "Taxable Net Valuation" for the two districts was the sum of $400,076,370; and the "1961-62 Junior College Tuition Tax Rate per $100" was $.273. The reported "Amount of Tax Which Would Be Raised" was the product of the amount of "Taxable Net Valuation" multiplied by the "Tax Rate." Thereupon the state paid the county $1,092,208 as prescribed by section 20211.

The report of the superintendent of schools did not detail the computation of the item designated "Taxable Net Valuation," or the method of fixing the "Tax Rate." However, the evidence in the case furnishes this information as hereinafter set forth.

The reported "Taxable Net Valuation" in the sum of $400,076,370 was the total assessed value of the property in the two districts on the secured roll. It did not include the value of the property on the unsecured roll, which totalled $27,143,420.

In determining the reported "Tax Rate" the auditor first fixed the amount to be raised by the tax. In doing this he took the total of the certified amounts of expense for the fiscal year 1960-1961 which was $1,412,397.28, and deducted therefrom the remaining balance in the Junior College Tuition Fund for that year consisting of cash in the sum of $170,631.17 and the unapportioned delinquent taxes in the county treasury on June 30, 1961 to which the fund was entitled in the sum of $9,109.03, which left a balance of $1,232,657.08 as the amount to be raised through the special tax prescribed by section 20202 for the fiscal year 1961-1962, if such a tax were levied. This procedure followed that used in previous years.[1] After

---

[1]The action of the auditor in deducting the remaining balance in the tuition fund from the certified amounts of expense incurred in educating

fixing the amount to be raised the auditor determined the "Tax Rate" pursuant to the method provided by Education Code section 20704, governing tax levies required for school districts;[2] deducted 10 percent from the value of the secured roll to cover delinquent tax payments; and divided the amount to be raised by the remaining assessment roll valuation, with the resultant tax rate of $.273.

In 1963 the state concluded the auditor's determination and report of the amount which would be raised if the tax prescribed by section 20202 were levied in the territory of the two newly formed junior college districts, which furnished the basis for its payment under section 20211, was error, because (1) no consideration was given to the amount of tax which would have been raised from a levy upon property on the unsecured roll, and (2) a 10 percent delinquency factor was assumed; claimed an overpayment of $168,292.56; and brought the instant action to recover this excess. The trial court found the amount determined and reported by the auditor "was based on a tax rate which: (1) did not include amounts arising from the levy of a tax upon unsecured property for the current fiscal year 1961-62, and (2) assumed a 10 percent delinquency factor"; but concluded no error occurred and no overpayment was made; and rendered judgment in favor of the county.

■ The issues at hand involve a construction of that part of section 20211 directing the auditor to "determine and report . . . the amount which would be raised if the tax prescribed by Section 20202 were levied" upon "all taxable

the non-resident pupils, to determine the amount to be raised by taxation, was proper (*County of Tuolumne* v. *Rafferty*, 252 Cal.App.2d 694 [60 Cal.Rptr. 765].)

Precedent for the action of the auditor in this regard was furnished by Education Code section 20702 and former Government Code section 29120, providing methods for determining the amount to be raised by taxation respectively for school districts and for general county expense. (Gen. see *Foothill Junior College Dist.* v. *Board of Supervisors*, 57 Cal.2d 771, 773, 774, 775 [22 Cal.Rptr. 201, 371 P.2d 977].)

Although Education Code section 20202 does not specify the method for calculating the amount of the special tax sufficient to defray the items of expense certified by the superintendent of schools pursuant to section 20201, no greater tax should be levied than is necessary, and funds from other sources available for the purpose for which the tax is levied should be credited against the amount to be raised by taxation. (*Otis* v. *Los Angeles County*, 9 Cal.2d 366, 370 [70 P.2d 633].)

[2]At the time the auditor made his determination and report, former Government Code section 29120.1, which might have applied (See 39 Ops. Cal. Atty. Gen. 130), was not in effect.

property" in the newly formed school districts. The object of the statute is to relieve the newly formed districts of a tax to meet their remaining obligation to the tuition fund. (Gen. see *Foothill Junior College Dist.* v. *Board of Supervisors,* 57 Cal. 2d 771 [22 Cal.Rptr. 201, 371 P.2d 977] ; *County of Tuolumne* v. *Rafferty,* 252 Cal.App.2d 694 [60 Cal.Rptr. 765].) The amount of the tax which would have been raised for this purpose must be measured in light of the amount of this obligation.

The state contends if a tax were levied for the fiscal year 1961-1962 pursuant to section 20202, the amount raised from the levy upon property on the unsecured roll would have been $75,991.66 ;[3] deducts this amount from the amount the auditor

---

[3]It is the spirit of the law in California that a property tax should impose on all property its just burden of taxation. (*Foothill Junior College Dist.* v. *Board of Supervisors,* 57 Cal.2d 771, 773-774 [22 Cal.Rptr. 201, 371 P.2d 977], *Pasadena Junior College Dist.* v. *Board of Supervisors,* 216 Cal. 61, 72 [13 P.2d 678].) A tax levy against only one of several classes of property subject to the burden for which the tax is imposed is excessive in the amount not levied against the other classes. (*Otis* v. *Los Angeles County,* 9 Cal.2d 366, 370 [70 P.2d 633]; *Gottstein* v. *Gray,* 66 Cal.App.2d 587, 590-591 [152 P.2d 742].) Likewise, a tax levied against a particular class of property in an amount determined without consideration of revenue available for the purpose from other sources also is excessive. (*Otis* v. *Los Angeles County, supra,* 9 Cal.2d 366, 370-371, 374.) Of course the determinations in these matters involve estimates; exactitude is not demanded and compliance with the requirement of equality is effected within approximated limits. (*Foothill Junior College Dist.* v. *Board of Supervisors, supra,* 57 Cal.2d 771, 774; *County of Tuolumne* v. *Rafferty,* 252 Cal.App.2d 694 [60 Cal.Rptr. 765]; *In re Rogers,* 91 Cal.App. 726, 728-729 [267 P. 729].)

The county assessor, in response to his duty to prepare an assessment roll listing all property in the county subject to assessment (Rev. & Tax. Code, §§ 601, 602), maintains (1) a secured roll listing property the taxes on which are a lien on real property sufficient in amount, in the opinion of the assessor, to secure their payment; and (2) an unsecured roll listing all other property. (Rev. & Tax. Code, §§ 109, 134.) Taxes are levied against property on the unsecured roll automatically (Gov. Code, § 29124); are due on the first Monday in March preceding the fiscal year for which that levy is made (Rev. & Tax. Code, §§ 2901, 2192) ; are computed on the rate of tax on similar property on the secured roll last fixed before the aforesaid due date (Cal. Const., art. XIII, § 9a; Rev. & Tax. Code, § 2905); are delinquent on August 31 (Rev. & Tax. Code, § 2922) ; may be collected by the assessor (Rev. & Tax Code, § 2903) ; and are distributed to each fund for which they were levied in accord with a statutory formula. (Rev. & Tax Code, § 4655.2.) Taxes collected after the due date and before the fiscal year for which they were levied are a part of the revenue for that fiscal year. (2 Ops. Cal. Atty. Gen. 362.)

The county contends, under its accounting system, unsecured property taxes raised by the tax levy for the fiscal year 1960-1961 were reflected in the remaining balance of the fund for that fiscal year, which was deducted from the amount to be raised for 1961-1962; thus the auditor's determination of the amount of tax to be raised in 1961-1962 did include

determined should be raised by taxation, which was $1,232,-657.08; uses this balance as a basis of need for determining the amount of taxes to be raised by a levy upon property on the secured roll; determines the tax rate by dividing this amount by the amount of the value of all of the property on the secured roll subject to tax; applies this tax rate to the valuation of the property on the secured roll in the two districts; obtains an amount which is $168,292.56 less than that determined by the auditor to be the amount which would have been raised; and bases its claim of overpayment on this computation.

It should be noted the tax levy prescribed by section 20202 is "upon *all taxable property* in the county not situated in any school district maintaining a junior college". (Italics ours.) Within the scope of this clear language is taxable property on both the secured and unsecured tax rolls. In determining the amount of tax to be raised by a levy on the secured roll, revenue from all other sources available for the purpose for which the tax is levied should be considered. (*Otis* v. *Los Angeles County,* 9 Cal.2d 366, 370-371, 374 [70 P.2d 633]; *Gottstein* v. *Gray,* 66 Cal.App.2d 587, 589-591 [152 P.2d 742].) The auditor's determination and report did not consider the amount which would have been raised by the 1961-1962 tax levy upon property on the unsecured roll. On the other hand, the state in its computation takes contradictory positions upon the matter, claims $75,991.66 would have been raised by a levy on the unsecured roll and deducts this amount from the amount to be raised by a levy on the secured roll; but in determining the total amount which would have been raised, limits its consideration to the amount that would have been raised by a levy on the secured roll alone. Even

consideration of a tax levied on property on the unsecured roll; and by virtue of this accounting system, the amount that would have been raised by a levy under section 20202 against the newly-formed districts for the fiscal year 1961-1962 would have been the amount of the tax levied against the property on the secured roll alone. In the case at bench, as in *Foothill Junior College Dist.* v. *Board of Supervisors, supra,* 57 Cal.2d 771, the accounting system in question seemed to equalize the tax burden between property on the secured and unsecured rolls. Whether, in 1961-1962 the county would receive a part of the obligation owed by the newly formed districts to the tuition fund from a tax levied against both the secured roll and the unsecured roll, or only against the secured roll, is of no consequence to the state because the amount of the obligation, i.e., the amount to be raised by taxes, was the same in either event. As a consequence, we need not and do not pass upon the propriety of the county's accounting system and its effect on the tax levied.

assuming the method of computation used by the state correctly determined the amount of tax which would have been raised by a levy upon the secured roll property, it would not correctly determine the amount to be raised by a levy on all taxable property within the two districts because it omitted the amount which would have been raised by a levy on the unsecured roll. Thus, by its own computation the state erroneously includes in its claim of overpayment the sum of $75,991.66.

The county contends the 10 percent delinquency factor was properly used in determining the tax rate upon which the auditor based his determination and report respecting the amount of taxes that would have been raised if the levy pursuant to section 20202 had been made. ■ Assuming the 10 percent delinquency factor would have been applied appropriately in determining the tax rate, if such had been levied, the application of that tax rate to the total unreduced valuation of the property on the secured roll, as a basis for determining the amount of tax which would have been raised under such a tax levy, was error. In substance, the auditor determined if a tax had been levied there would have been a 10 percent delinquency in tax payments; to offset this anticipated delinquency the total valuation of the secured roll was reduced 10 percent and a tax rate fixed accordingly; but in determining the amount of taxes which would have been raised by a levy at this rate, the auditor premised his conclusion upon a payment of all taxes levied against all of the property on the secured roll, and thus assumed no tax delinquency. The error is illustrated by comparing the total amount of tax that would have been raised by the special tax levy, using the auditor's method of computation, with the total amount of tax determined to be sufficient to defray the previously incurred tuition expense. The total valuation of the property on the secured roll subject to the tax, i.e., all of the property in the county not located in a junior college district, was $500,862,380. Applying the method of computation used by the auditor to determine the amount of tax which would have been raised from property in the Grossmont and Sweetwater Junior College Districts, the total tax which would have been raised from all property subject to the tax levy would have been $1,367,354, which is the product of the total valuation of the property subject to the tax multiplied by the tax rate. This amount, $1,367,354, exceeds the need

$1,232,657, by $134,697, which is more than 10 percent in excess of the amount the auditor determined would be sufficient to defray the tuition expense. Assuming it was proper for the auditor to take into consideration a 10 percent delinquency factor in fixing the tax rate of .273, his method of computing the estimated amount to be raised at this tax rate, by applying it to the total valuation of the property on the secured roll rather than to 90 percent of that valuation, was improper.

The foregoing conclusions are determinative of the issues arising out of the charges of error by the auditor in determining the amount of the tax which would have been raised from the levy upon property in the Grossmont and Sweetwater districts. For this reason, we do not rule upon other contentions by the parties in the premises.

In opposition to plaintiff's recovery of any overpayment defendant asserts estoppel. No estoppel exists. Among other things, there is no showing the county sustained any damage as a result of any act or omission by the state. (Gen. see *Adler* v. *City of Pasadena*, 57 Cal.2d 609, 615 [21 Cal. Rptr. 579, 371 P.2d 315]; *Department of Mental Hygiene* v. *Lucas*, 243 Cal.App.2d 464 [52 Cal.Rptr. 552].) The county received money to which it was not entitled. By virtue of Education Code section 20211.1 the board of supervisors may levy a special tax upon all property in the county not situated in a junior college district sufficient in amount to repay the excessive apportionment. This property received the benefit of the overpayment.[4] There is no reason why other people in the state should bear a burden incident to the error of the auditor which inured to the benefit of the non-district property owners.

The judgment is reversed with instructions to the trial court to conform its judgment to the views expressed in this

---

[4]At the end of the 1961-1962 fiscal year the remaining balance in the tuition fund was $225,720.52, consisting in part of the overpayment made by the state. As noted, the tax rate for the fiscal year 1961-1962 to raise the taxes prescribed by Education Code section 20202 was .273. Apparently because of the large remaining balance in the tuition fund at the end of the fiscal year 1961-1962 the tax rate for this purpose was reduced to .066; in the following year the tax rate was raised to .311.

The overpayment to the county by the state was from public funds and may be recovered back whether the mistake causing the overpayment was one of fact or law. (*Aebli* v. *Board of Education*, 62 Cal.App.2d 706, 725 [145 P.2d 601]; *Holtzendorff* v. *Housing Authority*, 250 Cal. App.2d 596, 632 [58 Cal.Rptr. 886].)

opinion by determining the amount of overpayment to the county by the state due to the use of the delinquency factor in the method employed by the auditor; to take whatever proceedings or additional evidence it may determine proper for this purpose; and to enter judgment in favor of the state for the amount of the overpayment so determined.

Brown (Gerald), P. J., and Whelan, J., concurred.