[S. F. No. 14668. In Bank.—July 25, 1932.]

PASADENA JUNIOR COLLEGE DISTRICT (a Body Corporate and Politic) et al., Petitioners, v. THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Respondents.

62

William B. Wade, Isaac Jones, W. E. Byrne, Charles P. McCarthy, Kenneth K. Wright, Hill, Morgan & Bledsoe and A. J. Hill for Petitioners.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondents.

CURTIS, J.—This is an original proceeding in *mandamus* to compel the defendants to levy, assess and extend a tax sufficient to repay the plaintiff junior college districts, moneys expended by them during the school year, 1930–1931, for educating pupils residing in the county of Los Angeles but not in any junior college district.

The plaintiffs are junior college districts organized under the laws of the state of California and the trustees of the respective districts. During the school year 1930–1931, each of the plaintiff junior college districts received in their junior colleges and educated therein, pupils who resided in Los Angeles County and not in any junior college district and expended the following amounts respectively for such purpose:

| | |
|---|---|
| Pasadena Junior College | $114,016.83 |
| Glendale Junior College | 44,869.86 |
| Compton Junior College | 94,334.75 |
| Long Beach Junior College | 30,163.34 |
| Fullerton Junior College | 25,103.24 |
| Chaffey Junior College | 33,512.37 |

The superintendent of schools of Los Angeles County on July 20, 1931, pursuant to sections 4.630 to 4.634 of the School Code (as then existing), reported these amounts to the Board of Supervisors of Los Angeles County, which, together with the claims of other junior college districts, constituted the amount to be raised for the junior college tuition fund. Among the students who were enrolled in plaintiff junior college districts and the cost of whose education was included in said districts, were students who resided in the Los Angeles City High School District. This

district was organized as a junior college district by virtue of an election held in March, 1931, but did not become fully organized until July 1, 1931, which was after the close of the school year 1930–1931. It therefore appears that at the time the tax levy for the year 1931 was required to be made, on September 1, 1931 (Pol. Code, sec. 3714), property within the Los Angeles City High School District and the newly organized junior college district was not strictly speaking property within the county of Los Angeles outside of a junior college district, but that at all times during the school year 1930–1931 and during which time the pupils were educated, the property within the Los Angeles City High School District was property in the county of Los Angeles not within any junior college district. It was urged by the defendant Supervisors and Auditor that the property within the Los Angeles City High School District by reason of its creation into a junior college district could not be taxed for the cost of educating pupils during the school year 1930–1931, and therefore there was deducted from the claims of the respective districts the cost of educating pupils residing in the Los Angeles City High School District, and a supplemental report purporting to be in place of the one previously filed, was filed by the superintendent of schools with the Board of Supervisors and Auditor on August 31, 1931. This was after the time for making changes in any part of the county budget had elapsed. (Pol. Code, sec. 3714.) Deducting these costs from the claims of the district left a balance of $199,427.87 to be raised for the junior college tuition fund. However, because the Board of Supervisors wished to keep the total school tax levy under 48 cents per $100 valuation, and not being willing to decrease the amount of the elementary school tax, which would be necessary if the junior college tuition fund tax were increased, the superintendent of schools fixed the amount to be raised at approximately $139,998.36. At the time the Board of Supervisors passed its resolution fixing the tax rate for the junior college tuition fund, it fixed the amount to be raised for such fund at $139,001.45, and made the tax levy accordingly. This levy was not made upon any property situate in the newly created Los Angeles City Junior College District which formerly comprised the territory of the Los Angeles City High School District, but was levied

upon all other property in Los Angeles County not within a junior college district either at the time of the levy or during the school year of 1930–1931. These deductions had the following effect upon the respective plaintiffs as to the amounts claimed by each:

| Name of District | Deduction for Los Angeles Pupils | Further Deduction to Reduce Tax Rate | Total Still Due District |
|---|---|---|---|
| Pasadena ............. | $ 30,999.30 | $24,739.22 | $ 55,738.52 |
| Glendale .............. | 29,138.02 | 4,688.09 | 33,826.11 |
| Compton .............. | 65,376.34 | 8,629.61 | 74,005.95 |
| Long Beach .......... | 22,114.57 | 2,398.53 | 24,513.10 |
| Fullerton ............. | 784.01 | 7,247.13 | 8,031.14 |
| Chaffey .............. | 704.80 | 9,776.66 | 10,481.46 |
| Totals ............... | $149,117.04 | $57,479.24 | $206,596.28 |

If the tax levy of 2 6/10c ($.026) per $100 as to real property and 1 1/10c ($.011) per $100 as to personal property fixed by the Supervisors for the junior college tuition fund had been levied on all property in the county outside of junior college districts and inclusive of property within the Los Angeles City High School District, more than sufficient funds would have been raised to repay plaintiffs the amounts due them for educating pupils residing outside of junior college districts during the school year 1930–1931, and if a levy were made this year for the purpose of meeting the deficit and was levied only upon property formerly situated in the Los Angeles City High School District, the rate would not exceed the said rate of $.026 on real property and $.011 on personal property.

It is to be noted that while the school tax estimates are to be submitted on the twentieth day of July in each year (Pol. Code, sec. 3714, subd. 1), and in the instant case the estimate then submitted by the superintendent included the full amount necessary to pay to plaintiffs the cost of educating pupils residing outside of junior college districts, and while these estimates cannot be changed or modified by the Board of Supervisors (Pol. Code, sec. 3714, subd. 4), and no change can be adopted even as to the county general tax after the 30th of August (Pol. Code, sec. 3714, subd. 4), the board and superintendent of schools, in the instant case, did, on the thirty-first day of August, 1931, reduce the amount of the estimate for the junior college tuition fund

and on the next day, and before plaintiffs could in any way object, the board made a tax levy raising only a portion of the funds required to reimburse plaintiffs for their expenditures previously made, and plaintiffs did not learn of this action on the part of the Board of Supervisors until after the levy had been made.

On May 16, 1932, plaintiffs made a demand upon the Board of Supervisors that it recognize and allow the deficit thus created as a valid claim against the junior college tuition fund and provide funds for its payment by a levy to be made this year (1932) upon property liable for the deficit. The board, by resolution adopted on the same day, refused to recognize or allow the claim or to take any steps whatever looking toward the raising of money for the purpose of paying the same. This proceeding then followed such refusal.

It is the position of respondents in the first place that the levy for the junior college tuition fund tax made on or about September 1, 1931, was made to pay current expenses for the school year, 1931–1932, and not for the next preceding school year 1930–1931, and, therefore, as the Los Angeles Junior College District had been organized prior to the commencement of the school year 1931–1932, the Board of Supervisors of the County of Los Angeles was without authority to levy a tax on the property situated therein to pay any expenses incurred by the plaintiffs' junior colleges for the year 1931–1932. The factual situation which the respondents contend existed at the time of the levy of said tax is inconsistent with and directly contrary to the stipulation of facts signed by the parties and filed herein. Paragraphs IV and VI of said stipulation read as follows:

"IV.

"That at all times herein mentioned one A. R. Clifton was the duly appointed, qualified and acting Superintendent of Schools of said Los Angeles County, and G. F. Gairing was his duly appointed, qualified and acting deputy; that on July 20, 1931, the said County Superintendent of Schools, by said deputy, made to said defendant Supervisors and to said defendant Auditor a written report, in which he showed and stated that the plaintiffs had expended the sums above set forth during the school year 1930–1931, in

educating junior college pupils, residing in said Los Angeles County and not in any junior college district; that said report referred to the sums so spent by plaintiffs during the school year 1930–1931 and all of the defendants above named understood and were aware of said facts. That said report was correct and correctly set forth the true amounts expended by junior college districts, including plaintiffs, during the school year 1930–1931, in educating pupils residing in said Los Angeles County and not within a junior college district.

### "VI.

"That following the receipt of said report of said County Superintendent of Schools of Los Angeles County, the said defendant Supervisors and said defendant Auditor represented to said County Superintendent of Schools that the cost of educating pupils residing in said Los Angeles City High School District during the school year 1930–1931 could not and should not be included in the tax to be levied by said defendant Supervisors in September, 1931, for the purpose of raising money for the junior college tuition fund for educating pupils residing in Los Angeles County and not in any junior college district, for the reason that a junior college district had been organized in said Los Angeles City High School District in 1931, to-wit, said Los Angeles City Junior College District, and directed said Superintendent of Schools to deduct from the said cost incurred by plaintiffs, as aforesaid, all costs incurred in educating pupils residing in said Los Angeles City High School District."

It clearly appears from the facts thus stipulated that the report of the superintendent of schools made in July, 1931, and the action of the Board of Supervisors in making the levy on or about September 1, 1931, both related to and were taken for the purpose of reimbursing the junior colleges for the cost of educating students, residing in the county of Los Angeles and outside of any junior college district, for the next preceding school year (1930–1931), and not for the succeeding school year (1931–1932). At the time of said levy, September 1, 1931, the law governing the subject was found in sections 4.270 and 4.271 (Stats. 1931, pp. 2575, 2576), which are as follows:

"4.270. Not later than the twentieth day of July of each year the superintendent of schools of each county in which there is not a junior college shall certify to the board of supervisors and to the county auditor of such county the total cost for education during the next preceding school year of all junior college pupils residing in such county and not in any junior college district and the estimated amount needed for that purpose for the current year.

"The said total shall not include outlays for permanent construction or improvements, nor moneys received from state apportionment, but shall include sixty-five dollars per unit of average daily attendance for the use of buildings and equipment.

"4.271. The board of supervisors with whom such certificate is filed must, at the time of making the tax levy for that year for county purposes, levy a special tax upon all taxable property in the county not situated in any junior college district, sufficient in amount to defray the costs, during the preceding school year, of educating all junior college students residing in such county and not in any junior college district."

It will thus be seen that under the law in force at the time of said levy and which remains unchanged, it was the duty of the Board of Supervisors to "levy a special tax . . . sufficient in amount to defray the costs, during the preceding year, of educating all junior college students residing in such county and not in any junior college district".

 It is apparent, therefore, that the superintendent of schools and the Board of Supervisors at the time of said levy were governed by the provisions of these two code sections. Under the law it was their duty to provide for the reimbursement of the junior colleges for money already expended by said colleges during the preceding year for the educating of students residing in the county of Los Angeles and not within any junior college district. They made certain deductions from the amounts actually expended by the plaintiffs in the education of these outside students, and the Board of Supervisors refused to levy a tax on property within the former Los Angeles City High School District, then within the Los Angeles City Junior

College District, for the reason that said Junior College District had been created during the school year 1930–1931. These matters will be given later consideration. We are now concerned simply with the object and purpose of said levy made on September 1, 1931, which, as we have seen, was to reimburse the plaintiff districts for money expended by them during the school year 1930–1931, and was not to provide funds for the current school year 1931–1932.

■ Respondents claim that the cost of educating said outside students for the school year 1930–1931 was paid by a tax levied by the Board of Supervisors on September 1, 1930. We think this claim cannot be sustained. Paragraph XVII of the stipulation of facts covers this subject, and is as follows:

''That junior college districts have uniformly presented claims to the Superintendent of Schools showing the cost of educating students residing outside of junior college districts during the preceding school year and that the Superintendent of Schools has submitted this cost as being the amount necessary for the junior college tuition fund and that junior college districts have reimbursed themselves from moneys received from such fund for their expenditures made during the preceding school year for the education of such pupils.''

From this stipulation it appears that it had been the uniform practice for junior colleges to be reimbursed for expenditures incurred by them in the education of outside students by a tax levy made during the school year immediately following that in which said expenditures were made. This being the case, the money raised by the tax levy of September 1, 1930, did not pay the plaintiff districts for the cost incurred by them during the year 1930–1931 but was for the cost incurred during the preceding year (1929–1930). ■ Respondents contend that under the law as in force prior to the enactment of section 4.271 of the School Code in 1931, which was in reality only an amendment of section 4.631 of said code, there was no authority vested in the Board of Supervisors for levying a tax to pay the cost of educating outside students for the next preceding year but that said section 4.631 of the School Code, and the corresponding provision of the statute creating junior colleges (Stats. 1921, p. 714) each ex-

pressly provided for the levy of a tax to pay the expenses of educating outside students for the current year, which would be for the school year following the levy and not for the school year next preceding said levy. Conceding that the statute of 1921 and these School Code sections are susceptible of the construction claimed for them by respondents, it is evident that neither the officers of the junior colleges, nor the authorities charged with the administration of these laws, placed any such construction upon them. On the other hand, these public officials fellowed the uniform practice of reimbursing the districts after and not before the districts had made the expenditures. Finally in 1931, evidently to clear up any uncertainty that might exist in the law upon this subject and possibly to make the law fit the practice followed by said officials, the legislature enacted section 4.271 of the School Code expressly providing that the tax levy should cover "the cost during the preceding year" of educating said outside students. From the foregoing it is perfectly apparent that the costs of educating outside students for the school year 1930–1931 were not paid to these plaintiffs by funds raised by the tax levy of 1930. These costs were unpaid at the close of said year, and under the law in force at the time of the levy of September 1, 1931, it was the duty of the Board of Supervisors of the County of Los Angeles to levy a tax sufficient in amount to defray the same.

Having determined that it was the duty of the Board of Supervisors of the County of Los Angeles to levy a tax "sufficient in amount to defray the costs during the preceding school year, of educating all junior college students residing in such county and not in any junior college district", we will now take up the deductions which the superintendent of schools under the direction of the Board of Supervisors and later the Board of Supervisors in effect made from the actual costs incurred by the plaintiffs for the education of such students for the school year 1930–1931. The first of these deductions was the sum of $149,117.04, which was made by reason of the fact that the Los Angeles City Junior College District had been organized on July 1, 1931, after the close of the school year 1930–1931. The other deduction amounting to the sum of $57,479.24 appears to be simply the result of an arbitrary act of the officials, and

no serious attempt is made by respondents to justify such deduction. The provisions of the School Code (sec. 4.271) are mandatory upon the Board of Supervisors. It has no discretion to revise or in any manner modify the amount as fixed by legally constituted authorities. Practically the same question was before this court in the recent case of *Esberg* v. *Badaracco,* 202 Cal. 110 [259 Pac. 730], and it was there held that while it was the duty of the Board of Supervisors to levy the tax, the determination of the amount thereof was for the Board of Education. The facts in that case and the law applicable thereto are in principle similar to those in the instant case. The deduction of $57,479.24 was, therefore, without any lawful authority, and was illegal.

The deduction of $149,117.04 by reason of the fact that the Los Angeles City Junior College District had been organized prior to the tax levy of September 1, 1931, is justified by the respondents under the terms of the statute (sec. 4.271 of the School Code), which limits the levy therein provided for to "taxable property in the county not situated in any junior college district". According to the strict letter of the statute the action of the Board of Supervisors in making this deduction might be sustained. Respondents rely upon the ruling of this court in the case of *Hughes* v. *Ewing,* 93 Cal. 414, 419 [28 Pac. 1067]. In that case the board of supervisors of Fresno County levied a tax upon land which had been excluded from the Fresno city school district. The purpose of the tax was to pay for a school building which the electors of the district had voted to construct just prior to the exclusion from said district of the lands sought to be taxed. The board levied the tax upon all property within the district at the time the vote was taken, including the excluded lands. Plaintiffs, the owners of said excluded lands, brought said action to declare the tax null and void. The action was finally determined in their favor, not because the excluded lands were not within the district at the time of the levy, but because the owners of said lands would receive no benefit whatever from the building to be constructed. In that case it was sought to justify the levy of the tax upon the excluded territory by resort to a strict construction of the statute which provided that the levy of the tax should be

made upon the property "within the district voting for the same". It was argued as the excluded lands were within the district when the tax was voted, that they were a part of the district "voting for the same", and, therefore, should be subject to the tax to pay for the improvement even though the owners of said lands had been excluded from all benefits to be derived from the construction of the building. In answer to this argument this court said: "Irrespective of the construction thus given to the section, it would be difficult, upon principle, to uphold the validity of a tax upon property which is without the district to be benefited by the expenditure of the money so to be raised. The theory upon which the power of taxation is authorized is the benefit to the tax-payer. It would be manifestly unjust to compel a contribution by tax to an object or for the benefit of a class in which the tax-payer is directly excluded from participating." That case differs most materially from the instant case. Here the tax sought to be imposed upon the property owners within the newly created Los Angeles City Junior College District was for the purpose of raising funds to pay for a benefit which said property owners had already received and enjoyed. It would be most inequitable and unjust to impose this burden upon the plaintiffs, or to spread it over the balance of the property in said county not within a junior college district, after the organization of the Los Angeles City Junior College District. We are satisfied that the legislature never intended to create any such indefensible condition. "It is the purpose of all revenue laws, as nearly as possible, to impose upon all property its just proportion of taxation, and a construction of the statute should not be had which will permit . . . properties . . . to escape their just proportion of taxation." (*Chesebrough* v. *City and County of San Francisco*, 153 Cal. 559, 568 [96 Pac. 288, 291].) It would be contrary to the very spirit of our laws, which seek to impose upon all property in the state its just proportion of taxation, for this court to hold that the property owners within the territory embraced within the newly organized Los Angeles City Junior College District, after enjoying the privileges afforded by the several plaintiff junior colleges during the school year of 1930–1931, could escape paying for these privileges by organizing a district

of their own just prior to the time fixed by law for the next tax levy. We are satisfied that such result was never intended. The deduction by the Board of Supervisors of the said amount for pupils residing in the newly organized Los Angeles City Junior College District was, therefore, unauthorized and illegal.

 Finally the respondents contend that there is no power or authority in the Board of Supervisors of Los Angeles County to make a relevy of taxes to meet the amounts illegally and unlawfully deducted by said board in their levy of September 1, 1931. By reference to section 4.271 of the School Code it will be seen that it is made the duty of the Board of Supervisors to levy this tax "at the time of making the tax levy for that year for county purposes". The time fixed for the levy of taxes for county purposes is fixed as not later than September 1st. It is now argued by the respondents that as the Board of Supervisors levied a tax on September 1, 1931, for the purpose of defraying the cost of educating outside junior college students for the preceding year, even though the tax levied was not sufficient for that purpose, said board has no power or authority to make a relevy at the appointed time in the year 1932 to make up said deficit due to the insufficient levy of the previous year. If the board is without such authority it follows, of course, that the court will not issue its writ of mandate to compel the performance of an illegal or idle act. Respondents have cited four cases in support of their assertion that the Board of Supervisors has no right or authority to make such relevy. The earliest of these cases is *Board of Education* v. *Common Council*, 128 Cal. 369 [60 Pac. 976]. This case involved an application for a writ of mandate to compel the common council of San Diego to levy a tax for the purpose of maintaining the public schools of San Diego for the fiscal year 1899. The common council refused to make such a levy. The petitioner then applied to the Board of Supervisors of the county to levy the tax. The board levied the tax and that tax had been paid. On page 370, the court said: "It is . . . apparent that the object sought to be obtained by the writ asked for has already been accomplished through a different instrumentality." The court, therefore, held that the writ would not issue to

compel the taxpayers to pay the same tax twice—such a procedure would be unjust and unfair. This was the real basis of the opinion. The court further held, however, as an additional ground for denying the writ, that the writ could not issue because the time of the levy had already expired. The court held that "a levy made after the date therein provided would be invalid". It will be noted, however, that the tax which the plaintiffs there asked to have levied was for the purpose of raising funds for maintaining said schools for the fiscal year 1899, and it was to compel the levy of this 1899 tax that the plaintiffs asked for a writ of mandate against the common council. The city charter of the city of San Diego expressly fixed the date of levying the tax as "on or before the second Monday in May". The common council refused to make the levy as demanded by plaintiffs. Plaintiffs then instituted said action to compel the levy, which action was commenced after the time fixed for making the levy for that year. The board of education in that case did not wait, as did the plaintiffs in this case, and demand a relevy at the time fixed for levying taxes for the next succeeding year, but immediately commenced their action to force the common council to make the levy during the year 1899. As the time in which the board could act in making said levy for the year 1899 has passed, the action was, of course, commenced too late, and the court very properly held that a tax levy for the fiscal year 1899, made thereafter and during that year would be invalid.

The next case cited is the case of *Board of Education* v. *Common Council*, 1 Cal. App. 311 [82 Pac. 89]. The opinion therein is very brief. It simply follows *Board of Education* v. *Common Council*, 128 Cal. 369 [60 Pac. 976]. Each action arose under the charter of the city of San Diego.

*McDonald* v. *Richards*, 79 Cal. App. 1 [248 Pac. 1049], is the third case cited by respondents. That action was brought against the county auditor to compel that officer to levy a tax for high school purposes to meet the deficit caused by the failure of the Board of Supervisors to levy a sufficient tax to raise the amount required for the maintenance of the high school during the school year 1925–1926. It was sought by that proceeding to change and increase

the tax levy for high school purposes which had already been made by the Board of Supervisors. This state of facts is evident from the following statement found on page 19 of the opinion, ''The facts before us show that the time has long since gone by when any authority exists to order any change in the tax levy already made. The different sections of the Political Code relating to the levy of county taxes, the making out of the assessment-rolls by the different ministerial officers having to do therewith show that the power to make any other assessment has ceased to exist and that any levy, if it were possible in this proceeding for this court to so order, would but lead to confusion, and that, under such circumstances, *mandamus* will not issue.'' It is quite evident that by that action it was sought to change and increase the tax levy already made by the Board of Supervisors for that year, and that the court refused relief on the ground that the assessment-rolls for that year were no longer in the custody or control of the auditor, against whom the action was directed, and, therefore, the power, which the auditor at one time possessed to make an assessment when the Board of Supervisors had neglected to do so, had ceased to exist.

The fourth and last case cited by respondents is *Rice* v. *McClellan*, 202 Cal. 650 [262 Pac. 1092, 1093]. This action was filed September 29, 1927. It was instituted by the board of trustees of the La Ballona high school district against the members of the Board of Supervisors of the county of Los Angeles, and by means thereof the plaintiffs sought a writ of mandate directed to the defendants commanding them to levy a tax sufficient in amount to maintain said high school for the school year 1927–1928. The time fixed for the levy of said tax was not later than September 1, 1927. This court very properly held that ''The time has passed when that may be done.'' That case like the others cited by respondents and discussed above involved an application for a writ of mandate to compel the Board of Supervisors to levy a tax during the current year after the levy date had passed. These cases do not involve the question as to whether a tax can be levied in the subsequent year for an obligation already incurred. After the date upon which the tax can be levied has passed, obviously a

writ will not issue to compel its inclusion in the levy of that year.

The authorities just discussed shed but little, if any, light upon the question before us, which is whether the Board of Supervisors may levy a tax during the present year to make up the deficit in last year's levy caused by the board's failure to levy a tax sufficient to meet the legal demands of the plaintiffs for educating outside students during the school year of 1930–1931. We have seen that the claims of plaintiffs were legal demands against the territory situated in the county of Los Angeles and outside of junior college districts. They in reality constituted a debt due plaintiffs by the property owners residing in said territory. It would be most unjust and inequitable to hold that the plaintiffs' right to recover their just demands may be defeated by the refusal of the duly constituted officials to perform their duty. This precise question seems never to have been before the appellate courts of this state. It would seem, however, that the law is impotent indeed if it afforded no remedy for redressing such a palpable wrong. At least one California case appears to lay down a rule of law that might well be applied in the present proceeding. In the case of *Nevada Nat. Bank* v. *Board of Supervisors*, 5 Cal. App. 638 [91 Pac. 122, 128], the board of directors of an irrigation district failed to levy taxes for the purpose of paying certain bonds and interest thereon as required by law. Plaintiff, the owner of certain of said bonds, obtained a judgment against the district for the amount of the principal and interest due on said bonds, and thereafter brought an action to compel the levy of an assessment sufficient to pay the same. The district, like the respondents in the instant case, contended that when the board of directors failed at the time fixed by law to levy the taxes for the payment of said principal and interest, its power became exhausted and that it was without authority at any time thereafter to levy any tax for said purpose. This contention was not sustained by the trial court, but judgment was given in plaintiff's favor. On appeal, the court, in sustaining the judgment, said: "We are not inclined to consider the law so impotent as is implied by appellants' argument. We hold that the burdens of the property owners have not been increased, since they in-

curred the obligation to pay these bonds. The statute, in our opinion, does not expressly nor by implication prohibit the method adopted herein for the collection of the money due.''

So in the present case, the burden on the property owners is not increased by compelling them to pay this year what they by right should have paid last year. Furthermore, there is nothing in statutes governing the levy of the tax in question which expressly or by implication prohibits a levy of the tax during the present year after the failure of the Board of Supervisors to perform their duty in that respect at the time fixed for the levy of last year.

In other jurisdictions there is to be found ample authority in support of petitioners' contention in behalf of the legality of the relevy. The case most directly in point is one from the Supreme Court of Iowa, *Perrin et al.* v. *Benson,* 49 Iowa, 325. In that case it was said, ''As we understand, the question for determination is, where the authority of the Board of Supervisors is full and complete, and it is their duty to levy school-house taxes at the proper time in 1875, and they neglected to do so, whether they have the power to make such levy in 1876, at the time provided by law for levying taxes.'' In that case the board levied the taxes in 1876, and the action was brought to enjoin its collection. The court further held, ''As it was the duty of the Board of Supervisors to make the levy, *mandamus* would lie to compel the performance of such duty. Suppose this course to have been taken, a disposition of such action in all probability could not have been obtained during 1875. If not the compulsory levy could not have been made earlier than 1876.'' Some discussion was had as to whether the tax could be levied after the year 1876, and if not levied in 1876 whether the right to compel the levy might not have been thereby waived. Following this discussion the court used this direct and significant language: ''We do not determine at what time the tax will be deemed waived because of a failure to make a levy at the time provided by law. What we do hold is, that where a levy is not made at the proper time, through negligence or mistake, it may be made at the time fixed by law for making the succeeding tax levy.''

A similar ruling was made by the court of appeals of Kentucky in the case of *Morton* v. *City of Fullerton*, 229 Ky. 76 [16 S. W. (2d) 797]. The facts in that case show that the city council attempted to levy a tax in 1927. It was not recorded as required by law, and it was held to be void. In 1928 the city council at the time of levying the 1928 taxes attempted to cure the defect in the 1927 levy, and relevy the 1927 taxes. In upholding this levy the court said, "If the council has, by inadvertence or neglect, failed to perform a duty imposed upon it by law at the proper time it may yet perform it. The city government has been established for the reason that it was deemed necessary for the peace and good order of the community, and a mere mistake of the council will not be allowed to destroy the government or cripple its efficiency. Where the council has failed to make a proper levy, it may subsequently do so."

The case of *Hubert* v. *New Orleans*, 215 U. S. 170 [54 L. Ed. 144, 30 Sup. Ct. Rep. 40, 43], is also in point. In this case it appears that a tax levy was required to meet the obligations of the city of New Orleans to pay certain sums authorized to be raised by taxation for the support of the metropolitan police. The tax had been levied and collected. It was not, however, paid over but was diverted to other purposes. The court held that the board did not exhaust its power until the obligation fixed by the statute had been actually satisfied, and that if there had been a diversion of the money raised by a levy in one year this did not prohibit a levy in a subsequent year to take care of the obligation which should have been by a tax levy of the preceding year. The court there stated, "The city exerted its power, as required by law, levied and collected the taxes, but applied them to other purposes, and has failed to turn them over on demand. We think the power to levy these taxes still exists. As to the creditor, deprived thereof by the action of the city, it is as though such power had never been exercised." That is a much stronger case than the case at bar. There the board had acted and levied the tax as required by law, but failed to legally apply the proceeds. Here the Board of Supervisors has failed to act at all in so far as the territory within the present Los Angeles City Junior College District is concerned. If the

power still existed to levy the tax after one had been levied, but the proceeds thereof diverted to other purposes than those required by the statute, we think that the same rule would apply, but with greater force, where as here the board charged with the duty of levying the tax failed at the appointed time to act as the law directed it should. Under such circumstances we think it clear from the case just discussed and others cited herein that the Board of Supervisors of the County of Los Angeles did not exhaust its power to levy a tax to meet the obligations due the plaintiffs and that the power continues to exist until said obligations have been fully paid and satisfied. As the time has long since passed to make said levy during the year 1931, the board not only has the power, but it is its duty to levy in the present year, 1932, a tax sufficient to meet the balance due on said obligations after the payment thereon of the money raised by the levy of 1931.

The only remaining question for consideration is as to the manner of levying the tax, or as to the precise property on which the levy should be made. This question we think has been simplified by the stipulation of the parties filed herein. According to this stipulation, in 1931 for the purpose of reimbursing the plaintiffs for the cost of educating outside students in said year, a levy of 2 6/10c ($.026) per $100 of valuation as to real property and 1 1/10c ($.011) per $100 in valuation as to personal property was levied upon all taxable property situated in the county of Los Angeles, and outside of any junior college district, except the property situated in Los Angeles City High School District, later organized into the Los Angeles City Junior College District, and "that if a levy were made for the fiscal year 1932-1933 exclusively on all taxable property situate in said Los Angeles City High School District sufficient to raise enough money to pay the balance claimed by plaintiffs, the owners of said property would not be called upon to pay as high a tax on their property for said purposes as the amount of the tax levied and paid upon all other property in said county not situate in a Junior College District during the school year 1930-1931." It will thus be seen that all property situated in the county of Los Angeles (except that formerly within the Los Angeles City High School District), which was liable and subject

to a tax to meet the demands of the plaintiffs, has paid its just proportion of said tax, and that by a levy of a tax equal thereto upon the property formerly situated in the Los Angeles City High School District, and now within the Los Angeles City Junior College District, a sufficient amount will be raised to pay the balance due plaintiffs with some additional. The only objection that the respondents make to the application of such a levy is that it would create an inequality between the Los Angeles city territory and the balance of the outside territory. But as long as the tax on the Los Angeles city territory will be less than that paid by the balance of the outside territory, the property owners in the Los Angeles city territory cannot complain. Those in the outside territory, not within the Los Angeles City Junior College District, have already paid the tax levied against their property. There is no way of levying this tax suggested by either of the parties to the proceeding, and none occurs to us, which will make it bear absolutely equally upon all the territory subject to the original tax. The fact that the tax rate now required is less than that paid by the balance of the outside territory under the levy of 1931, does not, in our opinion, render the levy illegal or void. It is fair and just and equitable. As stated above, it is the purpose of revenue laws as near as possible to impose upon all property its just proportion of taxation. (*Chesebrough* v. *City and County of San Francisco,* 153 Cal. 559, 568 [96 Pac. 288].) In imposing a tax to be levied against the property within the Los Angeles City Junior College District sufficient to meet the claims of plaintiffs, although absolute equality is not thereby attained, we are as near as possible causing all the property originally liable for the payments of these obligations to bear its just proportion of this burden.

It is, therefore, ordered that a peremptory writ of mandate issue out of this court directed to the respondents commanding them to allow the sum of $206,596.28 as a proper claim and charge against the junior college tuition fund in favor of the plaintiffs for the amounts expended by them respectively during the school year 1930–1931, for educating pupils residing in the county of Los Angeles but not in any junior college district, and further that said Board of Supervisors levy, assess, and extend at the time of making

the tax levy for the year 1932 for county purposes, a special tax, sufficient to raise the sum of $206,596.28, due and owing plaintiffs as aforesaid, upon all nonoperative taxable property situated in the territory formerly comprised within the boundaries of the Los Angeles City High School District, and now constituting the Los Angeles City Junior College District.

Langdon, J., Preston, J., Shenk, J., Waste, C. J., Seawell, J., and Tyler, J., *pro tem.*, concurred.