[Civ. No. 14713. Fourth Dist., Div. One. Mar. 16, 1978.]

MORRO HILLS COMMUNITY SERVICES DISTRICT,
Plaintiff and Respondent, v.
BOARD OF SUPERVISORS OF SAN DIEGO COUNTY,
Defendant and Appellant.

766

---

**COUNSEL**

Donald L. Clark, County Counsel, and Gregory C. M. Garratt, Deputy County Counsel, for Defendant and Appellant.

Sachse & James and Robert H. James for Plaintiff and Respondent.

---

**OPINION**

**COLOGNE, J.**—On March 13, 1973, Morro Hills Community Services District (District) filed a complaint against the County of San Diego Board of Supervisors (Board) seeking a declaration that the Board's resolution approving a proposed detachment from the District of 74 acres owned by William B. Renwick was invalid. The complaint sought a determination of the validity of the Board's action under Code of Civil Procedure section 860 et seq., general declaratory relief and it alleged abuse of discretion in adopting the resolution. The trial court concluded the Board had no authority to order detachment of property from a community services district subject to a condition which would relieve that property from the obligation of existing bonded indebtedness unless it reallocated the obligation to an affected city, county or district. It held the detachment, conditioned as it was here, was invalid.

The District is a community services district formed to secure dedication of and surfacing for certain roads within its designated boundaries. When formed the District was an uninhabited territory. It voted a general obligation bond issue for $95,000 and then sold $85,000 worth of the bonds. With these proceeds the District constructed roads and has maintained them since that time. Principal and interest on the bonds have been paid through taxes levied against all lands within the boundaries of the District, including the Renwick property.

The Renwick property was annexed to the City of Oceanside on February 26, 1966. On April 5, 1972, Renwick petitioned the Local

Agency Formation Commission of San Diego County (LAFCO) to have his property detached from the District asserting it was a part of the City of Oceanside.

Notice was given as provided by law and public hearings on the Renwick detachment were held. On July 3, 1972, LAFCO adopted a resolution approving the detachment and recommending the District adopt it. The approval for detachment was made specifically on the following conditions: "The Territory to be detached from the Morro Hills Community Services District shall be exempt of liability for payment to the District of all or any part of principal, interest and any other amounts which shall become due on account of all or any part of any outstanding or authorized but presently unissued bonds, including revenue bonds, or other contracts or obligations of said District, or any improvement district therein and the levying or fixing and the collection of any (1) taxes or assessments, or (2) service charges, rentals, or rates, or, (3) both, as may be necessary to provide for such payment, pursuant to Government Code Section 56470(c)."

After the District refused to take proceedings for detachment as certified by LAFCO, the Board held a public hearing on the detachment, and received oral and written protests, objections and evidence. At this hearing it was established none of the roads were constructed to provide access directly to the Renwick property and they served primarily the other property although if Renwick were to drive from his property to Fallbrook,[1] he would use those streets. It was also brought out, under current assessed values, Renwick pays $285 a year to the District and his assessed value is approximately 1.36 percent of the District's total assessed value. Numerous letters of protest were received by the Board objecting to the detachment of this property.

On January 17, 1973, the Board adopted a resolution of detachment of the Renwick land subject to the condition recommended by LAFCO. Effective July 1, 1974, Renwick was no longer liable for payment of taxes to the District.

On petition of the District to the superior court, the parties appeared and stipulated to the facts. After a hearing which added only oral

---

[1]Renwick had citrus and avocado trees on the property and to have his fruit processed he would transport them there, the location of the packing houses available for such produce.

argument on the legal issues the matter was submitted. In its memorandum opinion the trial court stated the issue to be: "does Section 56470, [2] and specifically Subsection (c) . . . permit the Board to relieve property from the obligation of existing bonded indebtedness when such property is removed from a taxing district." The trial court held the section provided authority to modify or adjust amounts due on the bonded indebtedness from the taxing agencies but did not provide authority for cancellation of liability.

A brief discussion of the history of the law in this area is essential to an understanding of language of section 56470.

In 1963, the California Legislature recognized the problems occasioned by urban sprawl and to encourage orderly formation and development of local governmental agencies established in each county a separate body, the Local Agency Formation Commission, to obtain and furnish information which will contribute to the logical and reasonable development of local government in the county. This statutory scheme was refined in the 1965 session with the adoption of the Knox-Nisbet Act (§ 54773 et seq.). As a direct result of this interest and particularly the study conducted by the Assembly Interim Committee on Municipal and County Government the Knox-Nisbet Act was complemented by enactment of the District Reorganization Act (D.R.A., § 56000 et seq.) which was intended to provide the vehicle for organization and reorganization of special districts.[3]

The studies at that time revealed a "bewildering maze of separate and often conflicting statutory provisions . . . is a permanent bar to any efforts to adapt district organization to the needs of growing communities. Not only [did] statutory complexities prevent consolidation or dissolution of

---

[2] All references to the code refer to the Government Code unless specifically stated to be one of the other codes.

[3] Statutes 1965, chapter 2043, section 663, page 4766, D.R.A., provides:
"This act is intended to implement the recommendation of the Assembly Interim Committee on Municipal and County Government as set forth in Volume 6, No. 22, of the committee report to the 1965 Legislature." Those recommendations are as follows:
"1. A district reorganization law should be enacted which would provide uniform procedures for handling special district dissolution, consolidation, annexation, detachments, etc.
"2. The local agency formation commissions should be urged to inventory and gather data in regard to special districts and other governmental agencies so that they may recommend changes which would save tax dollars and/or reduce costly sprawl."

unnecessary or obsolete districts, *much more important they also inhibit-[ed] districts which [were] currently functioning well from making any organizational changes in response to . . . community needs.*" (Italics added; Assem. Interim Com. Rep., p. 40, fn. 2.)

■ The D.R.A. provides the exclusive authority and procedure for initiation, conduct and completion of changes of organization and reorganization of special districts (§ 56001). ■ A detachment of a portion of a district is a change of organization within the meaning of the D.R.A. (§ 56028) and the procedure of accomplishing this result is provided for in detail. Generally, the procedure is initiated with LAFCO (§ 56140 et seq.) and on its determination (§§ 56260 et seq., 56270 et seq.) the matter is then presented to the board of directors of the district which must take proceedings for the change of organization or reorganization according to certain provisions (§§ 56274, 56310 et seq.). If the board of directors of the district fails or refuses to initiate, conduct or complete proceedings in compliance with LAFCO's determination, the Board may assume jurisdiction of the proceedings (§§ 56294, 56295). The Board then, by resolution, confirms its action and records the same with the appropriate state and local agencies (§ 56450 et seq.).

■ LAFCO is given authority to approve conditionally a detachment. Section 56250 provides in pertinent part as follows: "The commission shall have the powers and duties set forth in Chapter 6.6 (commencing with Section 54773) of Part 1, Division 2, Title 5 [the Knox-Nisbet Act], and the following additional powers and duties:

"(a) *To* review and *approve* or disapprove with or without amendment, wholly, partially or *conditionally* the following:

"(1) Proposals for *changes of organization.* . . ." (Italics added.)

The act limits any such condition as follows: ". . . . In any resolution approving any such proposal, plan of reorganization, alternative plan of reorganization, or report and recommendation of a reorganization committee, the commission may determine that the same shall be made subject to any of the terms and conditions authorized by Section 56470, as the commission may specify in said resolution; provided, that the commission shall not specify any term or condition which shall not be fair, just and equitable." (§ 56270.)

The conditions the D.R.A. contemplates are spelled out in greater detail in section 56470 which lists 19 conditions. At the time of the trial court's decision the section in pertinent part read as follows: "(c) *The imposition, exemption, transfer, division or apportionment, as among any affected cities, counties and districts of liability for payment of all or any part of principal, interest and any other amounts which shall become due on account of all or any part of any outstanding or then authorized but thereafter issued bonds,* including revenue bonds, or other contracts or obligations *of any* city, county, *district* or any improvement district therein *and the levying or fixing and the collection of any (i) taxes* or *assessments, or (ii) service charges, rentals or rates or, (iii) both* in the same manner as provided in the original authorization of the bonds and *in the amount necessary to provide for such payment.*" (Italics added.) It is significant the condition imposed on the detachment in issue here is stated in language essentially identical to the language of the code.

█ In its memorandum decision the trial court emphasizes the phrase "as among any affected cities, counties and districts" and states section 56470, subdivision (c) gives the Board "authority for the modification or adjustment of amounts due on the bonded indebtedness from the taxing agencies themselves. It does not purport to give authority for the cancellation of liability of specific parcels of realty within a district for the obligations of the district . . . ." The trial court then calls attention to section 56492 which reads as follows:

"Territory detached from a district shall continue to be liable for the payment of principal, interest and any other amounts which shall become due on account of any bonds, including revenue bonds, or other contracts or obligations of said district and any improvement district within which said detached territory shall have been situated, as shall be outstanding on the effective date of detachment and shall be subject to the levying or fixing and collection of any (i) taxes or assessments, or (ii) service charges, rentals or rates, or (iii) both, as may be necessary to provide for such payment." The trial court reasons section 56492 prevents it from interpreting section 56470, subdivision (c) from exempting the detached area from all liability. Rather, its view is the section permits only a reallocation of liability and not a cancellation of debt liability. We do not reach that conclusion.

In interpreting these sections we are guided by two principles:

1. The act shall be liberally construed to effectuate its purposes (§ 56006); and,

2. ■ The cardinal rule of statutory construction that a construction making some words surplusage is to be avoided (*People* v. *Gilbert,* 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]).

■ The construction placed on these sections by the trial court would make the word "exemption" in section 56470, subdivision (c) surplusage.

A construction giving meaning and effect to all the language of both sections 56470, subdivision (c) and 56492 is called for (*Select Base Materials* v. *Board of Equal.,* 51 Cal.2d 640, 645 [335 P.2d 672]). To this end a reasonable interpretation of section 56492 is the condition exempts the Renwick property from taxes, including taxes for payment of the bonded indebtedness, but does not eliminate the property's being subjected to liability, where otherwise necessary for payment of the bond obligation.[4] The section says the detached territory "shall continue to be liable . . . and shall be *subject to* the levying or fixing and collection of any (i) *taxes* or assessments . . . *as may be necessary* to provide for such payment." (Italics added.) The italicized language contrasts with the tax exemption authorization found in section 56470, subdivision (c) and makes clear the detached property must *remain* ("continue to be") *liable* for the payment of bonds and subject to taxation for that purpose *if necessary.* Ordinarily, default in repayment of the bond obligation would constitute the necessity.

As between Renwick and the District, Renwick is exempt from the levying, fixing and collection of taxes as provided in section 56470, subdivision (c) and in the condition of the detachment here in question. However, in the event it becomes necessary to provide for payment of the bonds, the bondholders, acting under section 56492, may compel the levying, fixing and collection of a tax against the Renwick property for this purpose (§§ 56010, 56010.1, 56492). To the latter extent and in the interest of avoiding any substantial impairment of the obligation of the

---

[4]By "taxes" we merely refer to any of the exactions mentioned in sections 56470, subdivision (c) and 56492 without intending any particular form of exaction.

District's contract with the bondholders, the provisions of section 56492 operate to supersede those of section 56470. Such an interpretation gives effect to both sections, carries out the purposes of the D.R.A., and avoids conflict with the constitutional proscription against impairing contracts (U. S. Const., art. I, § 10; Cal. Const., art. I, § 9).[5]

 █  Protection of bondholders' interests meeting the constitutional proscription is also found in section 56010 which reads as follows:

"No change of organization or reorganization, or any term or condition thereof, shall impair the rights of any bondholder or other creditor of any city or district. Notwithstanding any provision of this division, or of any change of organization or reorganization, or any term or condition thereof, each and every bondholder or other creditor may enforce all his rights in the same manner and to the same extent as if such change of organization, reorganization, term or condition had not been made. Any such rights may also be enforced against agencies, and their respective officers, as follows:

"(a) Annexation or detachment: against the district to or from which territory is annexed or detached."

Moreover, section 56010.1 provides: "The provisions of Section 56470, and any term and condition provided or made pursuant thereto, shall be enforceable by, between, among and against any public agency or agencies designated in any such term and condition, but shall not constitute or be given effect as a limitation upon the power of any bondholder or other creditor to enforce his rights (particularly any rights provided for by Articles 2 (commencing with Section 56480) to 7 (commencing with Section 56550), inclusive, of Chapter 9, Part 5 of this division), as if said Section 56470 had not been enacted or said term and condition had not been made or provided pursuant thereto."

---

[5]Moreover, this interpretation is consistent with chapter 90 of the Statutes of 1977 (effective Jan. 1, 1978) which, among other things, amends section 56470, subdivision (c) by incorporating "territory" into the clause on which the trial court relied so that clause now reads, "as among any affected cities, counties, districts *and territory* . . . ." (Italics added.) Chapter 90 of the Statutes of 1977 adds a section defining "affected territory" as any territory for which a change of organization is proposed or ordered (§ 56023.5). The new legislation contains a finding and declaration of the Legislature the amendment to section 56470 and the addition of section 56023.5 are declaratory of existing laws.

With these provisions in mind which protect the bondholders' security against the property, it was appropriate for the Legislature to provide, as it did, that where there is a detachment of property from a district and an exemption condition made under section 56470, subdivision (c) the property could not be freed of *all* liability as security for bondholders. Hence, the language of section 56492. The property remains subject of the bondholders' claim for security.

Even a "reallocation" of debt liability would impair contract rights if it does not make provision for ultimately holding all the property liable to pay the obligation of the entire bonded indebtedness (see § 61759; and see Rev. & Tax. Code, § 3351 et seq.). In the event of default, the bondholders have the right to seek redress as against every parcel in the district, as defined at the time of the bond issuance, as security for the entire debt. Accordingly, if a "reallocation" were to limit recovery of a portion of the debt to the property in a certain district it would unconstitutionally impair the bondholders' contract. We do not believe the Legislature intended to give a district or board the right to deprive the bondholders of *any portion* of their security for full performance. Section 56492 thus provides the method of effecting a change of organization plan without affecting the bondholders' rights in the event of default. It follows if the Board can properly reallocate the obligation without impairing the contractual rights, there is no evil in allowing an allocation of zero percent to an area in the proper case.

Unless we apply the foregoing interpretation, no change of organization as contemplated by the Legislature in the D.R.A. could be effected except by payoff or renegotiation of all bonded indebtedness of the District. Such a payoff or renegotiation requirement would place an unreasonable obstacle in the path of any effort to reorganize and would effectively prevent any changes of organization by detachment. This was not the Legislature's purpose. Instead, under the code sections in question, the reasonable division of liability between the parcels benefited is determined by the Board without affecting the bondholders' security and there is accomplished an immediate detachment, including exemption of the detached territory from payment of the ongoing obligation for the bonds.

This method of adjustment of liability between governmental entities is not a new concept in California. In *Johnson* v. *City of San Diego,* 109 Cal. 468, 473-474 [42 P. 249], the court held that the Legislature had

authority to alter boundaries of a city (by excluding the Coronado beach area from the City of San Diego) and in permitting the division to adjust the burden of the existing corporate debt between the entities.

"Municipal corporations in their public and political aspect are not only creatures of the state, but are parts of the machinery by which the state conducts its governmental affairs. Except, therefore, as restrained by the constitution, the legislature may increase or diminish the powers of such a corporation—may enlarge or restrict its territorial jurisdiction, or may destroy its corporate existence entirely. . . .

" 'A city,' says Mr. Justice Field, in *New Orleans* v. *Clark,* 95 U.S. 644, 'is only a political subdivision of the state, made for the convenient administration of the government. It is an instrumentality, with powers more or less enlarged according to the requirements of the public, and which may be increased or repealed at the will of the legislature.'

"This right of legislative control, arising from the very nature of the creation of such corporations, is established under the well-settled doctrine that such corporations have no vested rights in powers conferred upon them for civil, political, or administrative purposes, or as Dillon states it: 'Legislative acts respecting the political and governmental powers of municipal corporations not being *in the nature of contracts,* the provisions thereof may be changed at pleasure where the constitutional rights of creditors and others are not invaded.' (Dillon on Municipal Corporations, 4th ed., sec. 63.)

"The act of the legislature in relieving Coronado beach from the corporate control of San Diego, and in adjusting the burden of the city's debt, was undoubtedly the exercise of a proper power directed to the political and governmental affairs of the municipality. That the legislature by the terms of the act segregating the territory had the right to dispose of the common property, and provide the mode and manner of the payment of the common debt, imposing its burden in such proportions as it saw fit, is a proposition undisputed and indisputable. . . ." (*Johnson* v. *City of San Diego, supra,* 109 Cal. 468, 474-475.)

The division of liability based on benefit in school districts has been long recognized to be appropriate (*Pasadena J. C. Dist.* v. *Board of Supervisors,* 216 Cal. 61, 72 [13 P.2d 678]) and the courts have held ". . . '[i]t would be manifestly unjust to compel a contribution by tax to an

object or for the benefit of a class in which the tax-payer is directly excluded from participating.' . . . 'It is the purpose of all revenue laws, as nearly as possible, to impose upon all property its just proportion of taxation . . . .' " (*Pasadena J. C. Dist.* v. *Board of Supervisors, supra,* at p. 72.) The law in effect since August 13, 1971 gives the county committee of the county board of education considerable latitude to prescribe the method of dividing bonded indebtedness (see former Ed. Code, § 1902; and see Ed. Code, § 4140 et seq. and particularly Ed. Code, § 4142, which still gives this authority to the county committee). We note that Education Code section 4146 reads as follows: "When territory is taken from one school district or community college district and annexed to another school district or community college district and the area transferred contains no public school property or buildings, the territory shall drop any liability for outstanding bonded indebtedness in the district of which it was formerly a part and shall automatically assume its proportionate share of the outstanding bonded indebtedness of the district of which it becomes a part."

The obligation to the bondholders is not altered by these debt assumption practices. The laws under which public bonds are issued become a part of the contract between the bondholders and the issuing authority; and no change in these laws may be permitted to impair the bond obligation (*State School Bldg. Fin. Com.* v. *Betts,* 216 Cal.App.2d 685, 691 [31 Cal.Rptr. 258]). In *State School Bldg. Fin. Com.* v. *Betts, supra,* the court said at page 691: "The bar against impairment does not calcify the bond law beyond all possibility of amendment. The contract obligation is not impaired unless the alteration in the law deprives the bondholders of a substantial right or remedy. If, despite a change in the law, the bondholders may enforce their rights no less effectually than before; if there has been no encroachment upon *valuable* contractual rights, then the obligations of the contract have not been impaired. [Citations.]"

Here the Renwick property was placed in two taxing service areas, one, the City of Oceanside, and the other the Morro Hills Community Service District. The evidence produced at the Board hearing reveals the bonds were sold to provide funds to construct roads in the District but did not provide access specifically to the Renwick property. While a person wishing to travel from the property to Fallbrook would undoubtedly use these roads as being on the most direct route, the same might be said of many others living in this area of Oceanside and traveling to

Fallbrook. The record reveals this was the subject of discussion at the Board's hearing. There is substantial evidence to justify the conclusion the improvements financed by the bond issue provided no real benefit for the Renwick property. Since Renwick property represented only a small portion of the assessed value of the District (1.36 percent) and its exemption from liability for taxes for these bonds would have little impact on the taxing capacity of the District, and since the Renwick property would be subject to liability and taxes to service the existing Oceanside bonds, it was reasonable to free it of the obligation to pay the District bonds.

■  In a change of organization it is appropriate for the Board to determine and redistribute the burden of discharging the debt evidenced by the bonds based on benefit received or to be received by the various parcels. Such a redistribution not adversely affecting the contractual rights of the bondholders is not unconstitutional.

■  The matter of boundary determination of local government is a legislative matter (*Bookout* v. *Local Agency Formation Com.,* 49 Cal.App.3d 383, 386 [122 Cal.Rptr. 668]). There are no constitutional demands of due process restricting the mode, nature or type of notice that must be given for setting boundary lines and the formalities which the Legislature spells out for LAFCO are constitutionally adequate (*Bookout, supra,* at p. 387); additionally, the legislative delegation of authority to LAFCO is not unlawful (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.,* 51 Cal.App.3d 648, 668-675 [124 Cal.Rptr. 635]); and finally, we must conclude there is no denial of equal protection of the law by LAFCO or the Board since the persons similarly situated with respect to the legitimate purpose of the law receive like treatment. Moreover, as the court stated in *Simi Valley Recreation & Park Dist., supra,* at page 680, "There [is] . . . a significant, even compelling, state interest in providing a method of adjusting special district boundaries in the context of a regional and non-self-interest perspective, thereby to curb the parochialism and self-interest of local units which had produced the 'urban sprawl' and 'the wasteful duplication of services that results from indiscriminate formation of new local agencies or haphazard annexation of territory to existing local agencies.' " We are satisfied the action of neither LAFCO nor the Board violates the United States or California Constitutions.

█ Finally, we turn our inquiry toward the county's contention there is no showing of abuse of discretion by LAFCO or the Board.

We note particularly section 56006 which provides us with considerable instruction:

"This division shall be liberally construed to effectuate its purposes. No change of organization or reorganization ordered under this division shall be invalidated by any defect, error, irregularity or omission in any act, determination or procedure which does not adversely and substantially affect the rights of any person, city, county, district, the state or any agency or subdivision of the state. All determinations made by a commission or by any legislative body under and pursuant to the provisions of this division shall be final and conclusive in the absence of fraud or prejudicial abuse of discretion. In any action or proceeding to review any determination made by a commission or by a legislative body the sole inquiry shall be whether there was fraud or prejudicial abuse of discretion. Prejudicial abuse of discretion shall be established if the court finds that any determination of a commission or a legislative body was not supported by substantial evidence in light of the whole record." The section clearly applies the substantial evidence standard of both LAFCO and the Board. The rule of *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] which calls for the trial court to exercise independent judgment is not applicable (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com., supra,* 51 Cal.App.3d 648, 685-689).

It is clear from the facts agreed to by stipulation there was substantial evidence submitted to the Board to support its action and judgment should have been entered to sustain the Board's order approving the detachment as conditioned.

Judgment reversed.

Brown (Gerald), P. J., and Staniforth, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 25, 1978. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.