[No. B029353. Second Dist., Div. Five. Sept. 22, 1988.]

ANTELOPE VALLEY-EAST KERN WATER AGENCY, Plaintiff and Respondent, v.
LOCAL AGENCY FORMATION COMMISSION OF LOS ANGELES COUNTY, Defendant and Respondent;
AGUA DULCE WATER COMMITTEE, Real Party in Interest and Appellant;
DEPARTMENT OF WATER RESOURCES, Intervener and Respondent.

**COUNSEL**

Helm & Lemieux and Wayne K. Lemieux for Real Party in Interest and Appellant.

Best, Best & Krieger and Gregory K. Wilkinson for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

John K. Van de Kamp, Attorney General, Robert H. Connett, Assistant Attorney General, and Bruce S. Klafter, Deputy Attorney General, for Intervener and Respondent.

Robert H. Clark, Warren J. Abbot and Jarlath Oley as Amici Curiae on behalf of Plaintiff and Respondent and Intervener and Respondent.

**OPINION**

**ASHBY, Acting P. J.**—Appellant Agua Dulce Water Committee is an association of homeowners seeking to detach their property from the

territory of respondent Antelope Valley-East Kern Water Agency (AVEK). The Local Agency Formation Commission (LAFCO) of Los Angeles County granted their application for detachment by resolution on December 10, 1986. The LAFCO resolution provided that "the taxes and assessments would not be collectible as of July 1 of the first fiscal year following the calendar year in which the detachment is completed."

AVEK petitioned the superior court to grant a peremptory writ of mandate (Code Civ. Proc., § 1085) to set aside the LAFCO resolution on the ground that the condition relieving the detached territory of taxes and assessments is contrary to state law.[1] AVEK was created by the state Legislature in the Antelope Valley-East Kern Water Agency Law (hereinafter AVEK's principal act).[2] Section 84 of AVEK's principal act expressly provides that upon exclusion of territory from AVEK, "the taxable property within such excluded area shall continue taxable by the Antelope Valley-East Kern Water Agency for the purpose of paying the bonded or other indebtedness of the Antelope Valley-East Kern Water Agency outstanding or contracted for at the time of such exclusion and until such bonded or other indebtedness shall have been satisfied, to the same extent that such property would be taxable for such purpose if such exclusion had not occurred."

Appellant appeals from the trial court judgment which granted a peremptory writ of mandate commanding LAFCO to set aside its resolution.[3]

We affirm on the ground that the condition in the LAFCO resolution relieving the property of taxes is directly contrary to section 84 of AVEK's principal act, which we find to be specific and controlling. There is no merit to appellant's contention that in enacting the Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, § 56000) the Legislature intended to authorize LAFCO to override the Legislature's specific provision that territory excluded from AVEK shall remain taxable for the purpose of paying bonded indebtedness.

---

[1] The State Department of Water Resources also intervened in support of AVEK's petition.

[2] Statutes 1959, chapter 2146, section 49, page 5147. This uncodified act is cited in Deering's California Codes Annotated as 3 Deering's Water—Uncodified Acts (1970 ed.) Act 9095, section 49, page 548, and in West's Annotated California Codes as Water Code—Appendix (1968 ed.) section 98-49. Thus, when we refer in this opinion to section 84, for example, of AVEK's principal act, it would be found in Deering's at Act 9095, section 84, page 581 et seq., and in West's at Water Code—Appendix section 98-84.

[3] LAFCO did not appeal; LAFCO complied with the writ by setting aside its resolution.

## DISCUSSION

In 1960 the voters of California approved a plan for financing of the state water project. (*Goodman* v. *County of Riverside* (1983) 140 Cal.App.3d 900, 903 [190 Cal.Rptr. 7].) The plan approved by the voters in 1960 involved financing the state water project through state bonds. (*Id.* at pp. 903, 909, fn. 6.)[4] Under the act (the California Water Resources Development Bond Act [Wat. Code, § 12930], also known as the Burns-Porter Act) the State Department of Water Resources is directed to enter into contracts for the sale, delivery or use of water, and all revenues derived thereby are used to repay the costs of the project. (*Goodman* v. *County of Riverside, supra,* 140 Cal.App.3d at pp. 903, 906; Wat. Code, § 12937, subd. (b).) Prior to approval of the act by the voters, the responsible public officials stressed that in order to assure sufficient revenue to pay the bonds, even before water is delivered, the contracting agencies must have both the *power* and the *obligation* to levy local taxes to pay the interest and principal on the bonds. (*Goodman* v. *County of Riverside, supra,* at pp. 904-906.) The Legislature declared that the contracts between the State Department of Water Resources and the water agencies are entered for the direct benefit of the holders of the bonds, the income and revenues derived from such contracts are pledged to the purposes of the act, and "[s]uch contracts shall not be impaired by subsequent acts of the Legislature during the time when any of the bonds authorized herein are outstanding." (Wat. Code, § 12937, subd. (b).)

The Legislature created AVEK in 1959 in contemplation of approval of the Burns-Porter Act by the voters. In sections 61(9) and 78 of AVEK's principal act the Legislature gave AVEK both the power and the duty to levy taxes to pay the obligations of AVEK. AVEK's contract with the department contains the standard article 34(a) (*Goodman* v. *County of Riverside, supra,* 140 Cal.App3d. at p. 905) that "[i]f in any year the Agency fails or is unable to raise sufficient funds by other means, the governing body of the Agency shall levy upon all property in the Agency not exempt from taxation, a tax or assessment sufficient to provide for all payments under this contract then due or to become due within that year."

Thus the specific provision in section 84 of AVEK's principal act is an important part of a larger scheme whose purpose is to assure that the local taxpayers of a contracting agency contribute whatever amounts are necessary to pay the principal and interest owed to bondholders who helped to finance the state water project.

---

[4] Efforts in the 1930's to sell bonds to finance the Central Valley Project had been unsuccessful, partly because the state's general credit did not guarantee payment. (*Id.* at p. 909, fn. 6.)

In light of this background, we find no merit to appellant's argument that the Legislature intended, in enacting the Cortese-Knox Local Government Reorganization Act, to authorize LAFCO to detach territory from AVEK and relieve the detached territory of its tax obligations contrary to section 84 of AVEK's principal act. Appellant relies primarily upon *Morro Hills Community Services Dist.* v. *Board of Supervisors* (1978) 78 Cal.App.3d 765 [144 Cal.Rptr. 778]. We find *Morro Hills* to be distinguishable because it involved a local community services district, not a water agency created by the state Legislature to be a contracting agency in the state water project, such as AVEK.

The Cortese-Knox Local Government Reorganization Act of 1985 (Gov. Code, § 56000 et seq.) is largely a consolidation with renumbering of prior law relating to local district reorganization (*City of Agoura Hills* v. *Local Agency Formation Com.* (1988) 198 Cal.App.3d 480, 483, fn. 1 [243 Cal.Rptr. 740]). In order to encourage orderly growth and development and the assessment of local community services needs by a single governmental agency, rather than several limited purpose agencies (Gov. Code, § 56001), the Legislature gave broad powers to local agency formation commissions to approve or disapprove changes in organization of cities and districts. (Gov. Code, §§ 56375, 56843.) As a condition of its approval of a change in organization, a local agency formation commission may, under Government Code sections 56844, subdivision (c), and 57354, make certain provisions for payment of principal and interest on outstanding bonded indebtedness. (*Morro Hills Community Services Dist.* v. *Board of Supervisors, supra,* 78 Cal.App.3d at pp. 772-774.)[5]

In *Morro Hills,* the San Diego County LAFCO detached 74 acres from the Morro Hills Community Services District after that territory was annexed by the City of Oceanside. The community services district had been formed for dedicating and surfacing certain roads within its boundaries. (*Id.* at p. 768.) Reconciling the predecessor version of Government Code sections 56844, subdivision (c), and 57354, the appellate court approved a condition which exempted the detached property from current levying, fixing and collecting of taxes for bonded indebtedness, while at the same time preserving a potential remedy for bondholders to enforce such procedures against the property if necessary. (*Id.* at pp. 773-778.) Appellant argues that a similar condition could be imposed in this case, based on *Morro Hills.*

---

[5] At the time of the *Morro Hills* decision these two sections of the then-applicable District Reorganization Act were numbered Government Code sections 56470, subdivision (c), and 56492.

We find *Morro Hills* does not apply to this case. *Morro Hills* involved a local community services district for road purposes. The detached territory was annexed by the City of Oceanside where it became subject to other tax and bond obligations. Two seemingly conflicting provisions of the District Reorganization Act were reconciled by the appellate court to authorize the exemption from further taxation by the community services district.

The instant case, on the other hand, is not governed solely by the provisions of the Cortese-Knox Act as construed in *Morro Hills*. A specific statute, section 84 of AVEK's principal act, declares in no uncertain terms the tax consequences of detachment of territory from AVEK: the taxable property shall continue taxable by AVEK for the purpose of paying the bonded indebtedness to the same extent it would have been taxable if exclusion had not occurred.   ▮   A cardinal principle of statutory construction is that a special statute dealing expressly with a particular subject prevails over a general statute. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 420 [128 Cal.Rptr. 183, 546 P.2d 687].)   ▮   Moreover, although appellant points out that the Cortese-Knox Act "provides the sole and exclusive authority and procedure for the initiation, conduct, and completion of changes of organization and reorganization for cities and districts" (Gov. Code, § 56100), the act also recognizes that sometimes a local agency formation commission may be required to give effect to the specific provisions of an agency's principal act. Government Code section 56844, subdivision (q) provides, "Any change of organization or reorganization may provide for, or be made subject to one or more of, the following terms and conditions. . . . (q) Any terms and conditions authorized or required by the principal act with respect to any change of organization." (See also Gov. Code, § 56119.)

Appellant's contention that the Legislature intended the general provisions of the Cortese-Knox Act to supplant the specific provisions of section 84 of AVEK's principal act is unpersuasive in light of the background of this problem. Statewide interests are involved here which were not present in the *Morro Hills* case. AVEK was created by the Legislature as part of a state water project financed by the state.[6] Section 84 of AVEK's principal act is one of several provisions of state law intended to protect the financial interests of the state and its bond holders. Payment of obligations is required even if contracting agencies have not yet received any water. (*Goodman* v. *County of Riverside, supra,* 140 Cal.App.3d 900 at p. 904 and fn. 2.)

---

[6] "The state water project . . . consists of a series of 21 dams and reservoirs, 5 power plants, and 16 pumping plants which stretch from Lake Oroville in Butte County to Lake Perris in Riverside County." (*Goodman* v. *County of Riverside, supra,* 140 Cal.App.3d 900, 903 [190 Cal.Rptr. 7].)

We find it highly unlikely that the Legislature intended, in passing the Cortese-Knox Act, to delegate to the local agency formation commissions of the numerous counties where contracting agencies are located the power to relieve detached territory of the tax obligations which the Legislature has deemed essential to the successful financing of the state water project. Long range interests of the state might otherwise be jeopardized by local decisions.[7]

In conclusion, the trial court properly granted the writ of mandate because the LAFCO resolution is directly contrary to section 84 of AVEK's principal act, which we find to be specific and controlling. Appellant has not persuaded us that LAFCO is authorized to disregard this specific provision. The issue in this case is one of law. The legal rule is clear and does not depend on factual matters asserted by appellant, such as whether the property owners will ever receive money's worth in water for their taxes or whether this detachment itself would actually result in a significant fiscal impact on AVEK or the state water project. Our conclusion that section 84 of AVEK's principal act is controlling also makes it unnecessary to consider alternative constitutional arguments of respondent, intervener and amicus.

The judgment is affirmed.

Boren, J., and Kennard, J., concurred.

---

[7]The State Director of Water Resources wrote to LAFCO in the instant case, "Although the immediate impact of this detachment on AVEK's financial position would be small, we believe that the proposed detachment would set an unfortunate precedent by encouraging other areas to take the same action. Such detachments could cause financial difficulties for AVEK and in turn threaten the financial integrity of the state water project."